[No. 3969. Decided December 7, 1901.]

WILLIAM L. BIDWELL, *Respondent*, v. CITY OF TACOMA, *Appellant*.

TAX SALES — REDEMPTION — SURRENDER OF CERTIFICATE — ASSIGNMENT — NOTICE TO CITY.

Under § 121 of the charter of the city of Tacoma, which provides that upon redemption of lands sold by the city for taxes

the treasurer shall "pay over the amount received for such redemption to the purchaser or his assigns upon an order from the city controller on surrender of the certificate of purchase," the city controller is bound to take notice of the possibility of an assignment of the certificate of purchase and to require its surrender, and where the redemption money is paid to the original purchaser, the city is liable therefor to his assignee, irrespective of any agreement between assignor and assignee.

SAME — PAYMENT OF REDEMPTION MONEY TO PURCHASER — ACTION BY ASSIGNEE OF CERTIFICATE — LIMITATIONS.

Where money paid for redemption from a tax sale is received by the city for the purchaser, under a charter provision that it would "pay over the amount received for such redemption to the purchaser or his assigns upon an order from the city controller on surrender of the certificate of purchase," right of action against the city for payment of such redemption money to the holder of the certificate of purchase would not accrue until demand upon the city, and consequently the limitation on right of action would not begin to run until the date of such demand.

Appeal from Superior Court, Pierce County.—Hon. THAD HUSTON, Judge. Affirmed.

*William P. Reynolds, Emmett N. Parker* and *F. Campbell,* for appellant.

*Stiles & Nash,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—The city of Tacoma, in the year 1892, levied a tax against lot 4, block 2118, Barlow's Addition, in the sum of $186.72, for municipal purposes. On February 6, 1893, these taxes not having been paid, and being delinquent, the city caused this property to be sold to pay the taxes, and the same was bid in by one E. Steinbach for the sum of $214.97, being the amount then due for taxes, interest, penalty, and costs. A certificate of sale was issued to Steinbach therefor. Thereafter on November 10, 1893, Steinbach transferred this certificate

to the Security Company, a corporation, as collateral security for the payment of a note for a much larger sum. On February 7, 1894, the owner of the land redeemed the same from the tax sale by paying to the defendant the sum of $257.96, being the amount then due on said certificate. On February 19, 1894, the defendant paid this sum of money to Steinbach without the surrender of the certificate. The Security Company did not know that the certificate had been redeemed by the owner by payment of the money to the city, and did not know that the money had been paid by the city to Steinbach, and did not learn thereof until the month of January, 1900, when it made demand upon defendant and Steinbach for the money, which demand was refused. The defendant city, at the time it paid the money to Steinbach, did not know that the certificate was held by the Security Company, and had no notice that Steinbach was not the holder thereof, other than would be imputed by reason that the certificate was not surrendered by Steinbach when the same was paid. On June 4, 1900, the Security Company, after notice to Steinbach, sold and assigned the certificate to plaintiff, who again demanded payment from the city, which demand was also refused. Suit was then brought to recover the amount. Upon the trial, judgment was given in favor of plaintiff for the sum of $257.96. Defendant appeals.

It is insisted: (1) That the city was not bound by the assignment, having no notice thereof; and (2) that the claim against the city is barred by the statute of limitations. The city charter of the city of Tacoma, at § 121, provides as follows:

"All lots and parcels of land sold for taxes shall be subject to redemption by the former owner or his grantee, mortgagee or heir, within three years from the date of

the certificate of purchase, on payment to the treasurer
for the purchaser of the amount as shown by statement
made out by the controller of the amount necessary to
make such redemption, and on such payment being made
the treasurer shall give to the redemptioner a certificate
of redemption therefor and pay over the amount received
for such redemption to the purchaser or his assigns upon
an order from the city controller on surrender of the
certificate of purchase."

It is a well established principle of law that whatever
puts a party upon inquiry amounts in judgment of law to
notice, provided the inquiry becomes a duty, and would
lead to knowledge of the requisite facts by the exercise
of ordinary diligence and understanding. 16 Am. &
Eng. Enc. of Law, 792 and cases cited. This case, it
seems, comes squarely within this principle of law. The
city, by the section of the charter above quoted, says it
will "pay over the amount received for such redemption
to the purchaser *or his assigns*" on the surrender of the
certificate of purchase. Here is a recognition of the
rights of assignees, and a duty imposed upon the city
comptroller to require the surrender of the certificate on
payment thereof. When Mr. Steinbach applied for the
money deposited for the redemption of this certificate,
and the certificate was not produced, ordinary prudence
prompted the inquiry which would undoubtedly have led
to knowledge that Steinbach was not the holder. It is
insisted, however, that because there was a clause in the
agreement between Steinbach and the Security Company,
by which Steinbach reserved the right to withdraw any
and all of the tax sale certificates securing his note upon
depositing in their stead another tax certificate, and also
during the last year of the note to deposit with the Secur-
ity Company all money received from the redemption of
these certificates as collateral security, therefore Stein-

bach had a right to receive the money for the certificates. It is a sufficient answer to this to say that these provisions in the contract between Steinbach and the Security Company did not relieve the city from requiring the surrender of the certificates upon payment. If the city had knowledge of the contract, it cannot justify the payment of the money to Steinbach, under the circumstances, without showing he was entitled to it.

Upon the question of the statute of limitations it is necessary to inquire into the relation of the city to the holder of the certificate. This relation, it seems to us, is readily determined from the provision of the charter above quoted. The city received the money "for the purchaser" under the express agreement that it would *"pay over the amount received for such redemption to the purchaser or his assigns,* upon an order from the city comptroller *on surrender of the certificate of purchase."* Whether the city is a trustee of an express continuing trust, an agent, or a depositary makes no difference under these circumstances, because the general rule in each case is the same, viz., that the statute of limitations does not begin to run in either event until a demand is made and payment refused. It seems to us that there is no reasonable distinction between this case, and one where A. deposits money with B., payable to C., upon return of the certificate of deposit properly indorsed. In such case it is held that the statute does not begin to run until demand is made for the money. 1 Wood, Limitations (2d ed.), p. 387; *McGuire v. Linneus,* 74 Me. 344; *Warner v. New Orleans,* 87 Fed. 829. In this case the owner of the land paid to the city $257.96 to be paid to Steinbach or his assigns on surrender of the certificate of purchase. The money was not left with the city for the use of Steinbach, nor at his request, and no duty devolved upon the

city to pay the money until demand and return of the certificate. No adverse holding could, under these circumstances, be imputed to the city until notice of such intention was manifested in some way. It was said in *National Bank v. Washington County National Bank*, 5 Hun, 605:

"The bank may also give a certificate of deposit. When they do this, and when, as in this case, they make the certificate payable on its return, properly indorsed, they have then added to their original undertaking as a depositary an agreement that they will pay the deposit to the holder of that certificate, properly indorsed. They are, therefore, under a liability as depositary, to be ready to redeliver the money whenever demanded; and further, to deliver it to any holder of that certificate, properly indorsed. It follows, therefore, that they are liable to a *bona fide* holder of the certificate, notwithstanding a payment to the original depositor. It was urged by the defendants that the certificate was payable forthwith; that after the lapse of an unreasonable time (in this case seven years), it was presumed to be dishonored, and therefore, that the assignee took it subject to all equities. We think not. The very nature of the instrument and the ordinary modes of business, show that a certificate of deposit, like a deposit credited in a pass-book, is intended to represent moneys actually left with the bank for safe keeping, which are to be retained until the depositor actually demands them. Such a certificate is not dishonored until presented."

The test in this class of cases is whether or not an action could be maintained immediately upon the claim without demand. Can it be said that the holder of this certificate could have maintained an action against the city without alleging a demand and return of the certificate, or some allegation excusing failure to return the same? It is clear, it seems to us, that a cause of action could not be stated without such allegation, and that the

city would not be liable under the agreement until such demand was made. It follows, therefore, that the statute of limitations did not begin to run until January, 1900, the time of the first demand.

The cause will be affirmed.

REAVIS, C. J., and WHITE, HADLEY, FULLERTON, DUNBAR and ANDERS, JJ., concur.