[Civil No. 3383.  Filed October 4, 1934.]

[36 Pac. (2d) 559.]

CITY OF BISBEE, a Municipal Corporation, Appellant, v. COCHISE COUNTY, DANIEL S. KITCHEL, as Treasurer and Ex-officio Tax Collector of Cochise County, and JOHN HILD, HARLIE COX and JOHN MURPHY, as the Board of Supervisors of Cochise County, Appellees.

234

Mr. James T. Gentry, City Attorney, Mr. Fred Sutter and Mr. John E. Sanders, for Appellant.

Mr. Frank E. Thomas, County Attorney and Mr. Geo. M. Roark, Deputy County Attorney, for Appellees.

LOCKWOOD, J.—This is a petition for a writ of *mandamus* by city of Bisbee, a municipal corporation, hereinafter called plaintiff, against Cochise county, Daniel S. Kitchel, as treasurer and *ex-officio* tax collector of the county, and John Hild, Harlie Cox and John Murphy, as the board of supervisors thereof. A general and a special demurrer to the complaint were filed and by the court sustained, and plaintiff declining to amend, judgment was rendered dismissing the action, whereupon this appeal was taken.

The sole question before us is the sufficiency of the complaint to state a cause of action, and its allegations must for such purpose be taken as true. Briefly stated, they are as follows: After setting up the capacity of the parties, it is alleged that under the law the county treasurer of Cochise county was made the agent of plaintiff to collect and receive all city taxes due it, and that the various county treasurers have at all times since the year 1918 collected such taxes, together with all interest, penalties, and fees accrued thereon; that between the years 1918 and 1928 such treasurers collected for and on behalf of plaintiff as penalties and fees on account of city taxes, as aforesaid, $2,730.86, which they have failed and refused to pay to plaintiff, but instead have deposited such money in the general fund of Cochise county; that during all these times plaintiff believed that the full amount of taxes, interest, penalties and

fees collected by the county treasurer on its behalf was remitted to it, as required by law, but that about the month of August, 1931, it caused to be made an audit of the books of the treasurer and discovered that the sum aforesaid had not been remitted. The complaint further alleges that about August 1, 1931, the county treasurer notified plaintiff that he would no longer remit to it any interest collected upon city taxes which were collected after they had become delinquent. It was further alleged: "That on or about the 2nd day of April, 1932, plaintiff did make written demand on defendants, verified by affidavit of plaintiff's agent, thereunto duly authorized, by filing said written demand with the Board of Supervisors of Cochise County, for the sum of Two Thousand Seven Hundred Thirty and 86/100 ($2730.86) Dollars as and for all of said penalties upon the delinquent payment of city taxes, received and collected by the said Treasurer and ex-officio Tax Collector for and on behalf of plaintiff herein during and between the years 1918 to 1929 inclusive, . . . " and that it also demanded all of the penalties on such taxes for the years 1930 and 1931 until the date of the demand, and that the treasurer refused to pay to it the amount so collected. The prayer of the complaint is that the defendants be made to pay the sum of $2,730.86, being penalties collected on account of plaintiff during the years 1918 to 1929; for an accounting of all such penalties collected during the year 1930 and up to June 13, 1931, and a further accounting for interest alleged to be due since the last-named date on delinquent city taxes.

The demurrer was based on four grounds: (1) That the complaint did not state a cause of action; (2) that it did not state facts authorizing the issuance of a writ of *mandamus;* (3) that the indebted-

ness claimed was barred by the statutes of limitations; (4) that it does not allege that a demand, such as the law requires, was presented to and rejected by the board of supervisors.

The first question before us is whether, under circumstances like those stated in the complaint, *mandamus* is a proper remedy. We think that question, so far as this jurisdiction is concerned, is answered by the case of *Calhoun* v. *Maricopa etc. District No. 1*, 37 Ariz. 506, 295 Pac. 785, 787. It was an action in *mandamus* against the county treasurer requiring him to transfer to the credit of an irrigation district delinquent tax penalties collected by him as county treasurer for and on account of the district. Therein we say:

"The remedy of *mandamus* was not questioned throughout the proceedings, and it is not now, only incidentally in the motion to modify the writ. However that may be, we think that *mandamus* was the proper remedy, and it makes no difference whether the county has converted the district's money or not. In *State* v. *McNamer*, 62 Mont. 490, 205 Pac. 951, 954, *mandamus* was allowed to compel the county treasurer of Glacier county to pay over to the city of Cut funds belonging to the city but which had been diverted by the county treasurer. The court there said:

" 'The above also disposes of the point made by defendant that *mandamus* will not lie in the case at bar for the reason that the county treasurer, if required to pay the sum due the city, would have to take the money that was already appropriated to other funds.

" 'While we are fully aware of the rule that *mandamus* will not lie to compel the doing of something unauthorized by law or impossible of performance, yet in the instant case such a rule is inapplicable. In contemplation of law the city's money is still in the county treasury, and the fact that the money has been diverted by the arbitrary act of the county

treasurer into some other fund or funds does not excuse the treasurer from the duty of paying the same over to the city.' "

If, as alleged by the complaint, there is in the hands of the county treasurer money belonging to the plaintiff which has arbitrarily been diverted into the county's funds, the custodian of these funds can be compelled by *mandamus* to pay them over to the city. We think, however, that so far as Cochise county and the supervisors thereof are concerned, the writ does not lie. The theory upon which the complaint is based is obviously and necessarily that certain money came into the hands of defendant Kitchel and his predecessors in their official capacity, which, as a matter of law, were held in trust by them and now by him for the benefit of plaintiff. If such is the case, the money was never legally a part of the funds of Cochise county and was not under the jurisdiction of the supervisors. No claim, therefore, was necessary to be made against the county and no order of the supervisors for the payment thereof was required. The demurrer as to the county and the members of the board of supervisors was properly sustained.

Nor do we think that the objection that the defendant Kitchel was not treasurer during all the time mentioned in the complaint is material. The court takes judicial notice of the fact that it is the duty of each retiring county treasurer to account for and turn over to his successor all the money which he has received in his official capacity during his term of office, less such as is legally paid out. We must presume that duty has been performed and that all funds collected, as charged in the complaint, have passed into the hands of the present treasurer. If, as a matter of law, they were and are funds of the

city of Bisbee, he is responsible therefor, in the absence of some showing which would relieve him of that responsibility.

We consider next the vital question as to whether the money referred to was money of the city or whether it properly belonged to the county. In so determining we must take into consideration the various statutes of Arizona governing the situation. In 1913 the general statutory law of Arizona was revised. Under the Civil Code of that year cities of the class of Bisbee collected their taxes independently of the county authorities. The county taxes were then, as now, collected by the county treasurer, and it was provided that if taxes were delinquent, certain additional payments should be collected when they were finally paid. The section governing such payments is paragraph 4924, Revised Statutes of 1913 (Civ. Code), afterwards re-enacted in substance as section 3128, Revised Code of 1928, which reads as follows:

"4924. Fees shall be charged for services rendered in the collection of delinquent taxes under the provisions of this act, as follows:

"By the county treasurer for collection, four per cent of all sums collected after the second Monday of December, and for making the 'back tax book,' fifteen cents for each tract of land or town lot, separately assessed, to be taxed as costs and collected from the party redeeming such tract or town lot.

"By the superior court clerk, the sheriff, and the printer, such fees as are allowed by law for like services in civil cases, which shall be taxed as costs in the case; provided, that in no case shall the state or county be liable for any such costs, except printing, nor shall the county board of supervisors allow any claim for any costs incurred by the provisions of this act, except printing in cases where no sale is made. In such cases the printing shall be a legal charge against

the county. *All fees collected by any county officer under the provisions of this act shall be by him paid to the county treasurer for the benefit of the general fund of the county,* taking the county treasurer's receipt therefor in duplicate, one of which he shall retain; the other must be filed with the clerk of the board of supervisors.'' (Italics ours.)

Upon an examination of this statute it will be seen that the amounts to be collected for services rendered in the collection of delinquent taxes are thrice called ''fees'' and thrice referred to as ''costs.''

In 1917, the legislature decided to change the method of collecting taxes in cities of the class of plaintiff herein, and adopted chapter 37, Session Laws 1917, which was re-enacted in substance as sections 3102–3109, Revised Code of 1928. This chapter, in substance, provided that it should be the duty of the county assessor to make all assessments, both for counties and cities of the class of plaintiff, and of the county treasurer to collect both the city and the county taxes. The sole duty of the governing body of the city was to fix its tax rate and certify that to the board of supervisors so that they could levy the proper city tax along with the county and district taxes. Sections 10 and 11 of chapter 37 read as follows:

''Section 10. The taxes as shown upon the roll for cities, towns and other municipalities shall be collected by the county treasurer at the times and in manner provided for by law for the collection of state and county taxes. The warrant to the county treasurer shall include such city and county taxes, and confer upon the county treasurer the same powers respecting the collection of such city and town taxes and respecting the return and sale of property for delinquent taxes, as conferred upon him respecting the collection, return and sale for the delinquent taxes of state or county.

"Section 11. It shall be the duty of the county treasurer to pay over to the treasurer of each city, town or other municipal corporation in his county, on the first day of each month in each year, all money in his hands collected for the previous month on taxes for each such city, town, or other municipal corporation, and on or before the first day of January in each year make a final settlement with the treasurer of each such city and town, or other municipal corporation, respecting the taxes for each and pay over to the treasurer of each city, town, or municipal corporation the money then due. The county treasurer shall pay over to the treasurer of each city, town or municipal corporation, in the same manner, as fast as realized or collected, *the proportionate amount of delinquent taxes, interest, and costs, on all collections of delinquent taxes, and of and from tax sales and redemptions therefrom.* In receipting for payments made by county treasurers the treasurer of each city, town, or other municipal corporation shall give the county treasurer duplicate receipts for each payment made; and the county treasurer shall give one of such duplicate to the city auditor, city recorder, or town clerk, or other municipal officer, whose duty it may be to audit or check the accounts of the treasurer of the city, town, or municipal corporations as the case may be, and the other duplicate receipt shall be an acquittance to such county treasurer for amounts thereby shown in his settlements with the county board of supervisors." (Italics ours.)

It is urged by defendant that the money alleged by plaintiff to have been collected and improperly retained by it from 1918 to 1927 is by paragraph 4924, *supra,* denominated as "fees," and that in section 11, *supra,* there is no provision for the payment of "fees" to the city, but only "taxes, interest, and costs," it being the apparent argument that the "fees" mentioned in paragraph 4924 are not "costs" within the meaning of section 11. It is the universal rule of statutory construction that when a subsequent

act of the legislature is in conflict with a prior act, it by implication repeals so much of the prior act as is in conflict with the latter law. If then there be a conflict between paragraph 4924, *supra,* and chapter 37, *supra,* the latter must prevail, being a later enactment. The only authority given a county treasurer to collect interest, costs, fees, and penalties of any nature upon delinquent city taxes is that found in section 10 of chapter 37, which provides that the warrant given him to collect city taxes confers upon him the same power respecting those, including delinquent taxes, as is given him for county taxes. It has been universally, and we think correctly, held by the different county treasurers that this in effect applies the various charges set forth in paragraph 4924, *supra,* for county delinquent taxes to city delinquent taxes, and indeed, unless this be true, there is no authority of law for collecting any additional amount on account of delinquencies of any such city taxes. The only items to which the word "costs" found in section 10 can possibly be applied are those classified indiscriminately by that name and as "fees" in paragraph 4924, *supra,* and unless we are to give no meaning at all to the word, the legislature must have intended it to apply to those items. We think, therefore, that when the county treasurer collected the various additional sums referred to in paragraph 4924, *supra,* on delinquent city taxes, the later statute required him to handle them in the same manner as the tax itself and the interest thereon, and to pay them over to the municipal corporation. Such being the case, when the money was collected it was not the property of Cochise county, but the property of the city of Bisbee, held in trust by the county treasurer for the municipality.

But it is urged this action shows on its face it is barred by the statute of limitations. This argument is based on the provisions of section 2058, Revised Code of 1928, which reads in part as follows:

" . . . There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, the following actions:
. . .

"3. Upon a liability created by statute, other than a penalty of forfeiture."

—and it is urged that the liability of the county treasurer for this money is created by statute, and, since the action was not brought until 1932, it was long barred by section 2058, *supra*. There is a serious conflict in the authorities as to whether statutes of limitations apply to municipal corporations unless the legislature expressly states that they do. We think, however, we need not decide the question as to whether in an action of this kind the city can claim that it represents the state in its sovereign capacity, and is thus exempt from the statute of limitations. We have held in the case of *Sumid* v. *Cairns,* 25 Ariz. 597, 220 Pac. 1084, 1085, considering the question of when the statute of limitations begins to run in favor of a trustee:

" . . . As a general rule, length of time is no bar to a trust clearly established, and express trusts are not within the statute of limitation. The possession of the trustee is presumed to be the possession of the *cestui que trust*. A holding under such a trust can only be converted into a holding adversely to the rights of a *cestui que trust* by a clear and unequivocal declaration of such intention brought to the attention of the *cestui que trust*. It is only then and in that way that the statute of limitation will begin to run."

It is very generally held that when money is regularly paid into a public treasury or comes into the

hands of public officers to be held or paid over according to law, it is deemed to be held in trust within the rule exempting express trusts from the operation of the statute of limitations. *Miller & Lux* v. *Batz,* 142 Cal. 447, 76 Pac. 42; *San Luis Obispo County* v. *King,* 69 Cal. 531, 11 Pac. 178; *Rush County* v. *State,* 103 Ind. 497, 3 N. E. 165; *Gas-Light Co.* v. *Memphis,* 93 Tenn. 612, 30 S. W. 25; *New York Security etc. Co.* v. *Tacoma,* 30 Wash. 661, 71 Pac. 194; *Bidwell* v. *City of Tacoma,* 26 Wash. 518, 67 Pac. 259.

A very similar situation arose in the case of *Village of Mountainhome* v. *Elmore County,* 9 Idaho 410, 75 Pac. 65, 66. In that case the county treasurer had collected certain road taxes, a portion of which by law was payable to the municipality, which sued to recover the money. The defendant raised the point that the one-year statute of limitations should apply, but the Supreme Court of Idaho said:

" . . . If, then, the county is the agent or trustee of the municipality for the collection of this specific revenue and for this specific purpose, the statute of limitations cannot begin to run against the municipality until demand has been made therefor, or the agent has refused to pay. . . . "

See, also, *City of New Orleans* v. *Fisher,* (C. C. A.) 91 Fed. 574; *Everett School Dist.* v. *Pearson,* (D. C.) 261 Fed. 631; *Sixth Dist. Agr. Assn.* v. *Wright,* 154 Cal. 119, 97 Pac. 144.

We hold, therefore, that since this action was brought within a year of the time when the treasurer notified the plaintiff that he did not intend to pay the penalties, fees, and costs collected by it on Bisbee city taxes from 1918 to 1931, that the statute of limitations had not run, and that the complaint did state a cause of action so far as any interest, costs, or penalties collected by the county treasurer of Cochise

county on behalf of Bisbee city taxes up to the 13th day of June, 1931, and that the city was entitled to an accounting up to that time.

So far as moneys collected after said 13th day of June, 1931, are concerned, the situation is very different. The law in regard to the disposition of these funds remained the same from 1917 up to 1931. The Tenth Legislature in that year adopted chapter 103, Session Laws 1931, which provided an entirely new system for the collection of delinquent taxes, both city and county, and changed the law in regard to the disposition of interest, penalties, charges, and fees to read as follows:

"Section 33. All moneys collected or received by the county treasurer pursuant to the provisions of this act as delinquent or back taxes shall be distributed by him in the same manner and proportions as he by law is required to distribute other taxes collected by him; provided, that interest, penalties, charges or fees collected in connection with the collection of taxes shall be credited to the general fund of the county."

It is the rule of law that, in the absence of an express statute to the contrary, interest, penalties, and costs collected on delinquent taxes follows the tax, but the legislature may change this rule and provide otherwise. *Maricopa County Municipal Water Conservation Dist.* v. *Ward,* 35 Ariz. 541, 281 Pac. 465. Since it has in its discretion explicitly enacted that the interest, penalties, charges, and fees collected in connection with the collection of delinquent taxes of every nature should no longer follow the tax but be credited to the general fund of the county, the plaintiff had no interest in any of the amounts collected for such purposes after June 12, 1931, and is not entitled to an accounting therefor.

The judgment of the superior court of Cochise county is reversed and the case remanded, with instructions to overrule the demurrer to the complaint

so far as defendant Kitchel is concerned, and for further proceedings in conformity with this opinion.

ROSS, C. J., and McALISTER, J., concur.