## RITE CREDIT TIRE CO v
## A. B. WILLIAMS AUTO SALES CO

Municipal Court, Dayton, Civil Division
No. 72249. Decided August 12, 1931

**MARTIN, J.**

Whether plaintiff or defendant was the owner and entitled to the possession of said tires and tubes at the times same were taken into possession and sold by defendant as a part of Campbell's car, depends upon the legal effect of the ultimate facts and the terms of the instruments above recited.

In Ohio it is well established that the legal title to mortgaged chattel property is in the mortgagee.

**Robinson, Jr., v Fitch, 26 Oh St 659 at page 663:**

"1. A chattel mortgage in the usual form conveys to the mortgagee the property mortgaged, and he thereby becomes the general owner of it, and in the absence of a reservation of the right of possession in the mortgagor, he is entilted to the imme-didate possession of it. If there is such a reservation in favor of the mortgagor, such reservation only affects the possession according to the terms of the reservation, the title to the property remaining in the meantime in the mortgagee, who becomes entitled to the immediate possession on breach of the condition."

This statement of the law has been followed or approved in more than a score of Ohio decisions.

It is equally well established that a chattel mortgage does not include and cover after-acquired property which does not become a part of the original property by accession as against lien creditors of the mortgagor with or without notice of the mortgage, unless the mortgagee reduce such after-acquired property to possession before the mortgage or lien of the creditor attaches. A mortgage with an after-acquired property clause does, however, impose a continuing, executory obligation on the mortgagor to give the mortgagee a lien on after-acquired property.

**Nertzorg v National Supply Company, 18 C. D. 112.**

Inasmuch as the undisputed facts in this case show that the tires and tubes were not reduced to possession by defendant before plaintiff's mortgages were filed, it follows that the provisions of defendant's mortgage hereinbefore recited were not operative in and of themselves to perfect title in defendant to the tires.

The entire question is whether or not the addition of tires and tubes to Campbell's car under the circumstances hereinbefore recited amounted to an accession?

A number of different considerations have controlled the courts in determining whether there has been an accession, chief among which are:

1. Change of species or entire transformation from one thing to another.

2. Identity, or the retention of the original form so that it can be traced, identified, severed and reclaimed as an entity and entirety without injury to itself or the property to which it is attached.

3. Relative value, in which the property having the greater value is considered the principal thing.

4. Intention of the parties where other things are equivocal.

5. Actual or presumed knowledge of the vendor and mortgagee of the thing added with reference to the method of attachment and use of the added part, and the existence of a general mortgage to another on the principal thing.

6. The status of the property with reference to the title or liens thereon at the time it is acquired by the mortgagor and attached to the principal thing.

Considerations 1, 3 and 4 are not, in the opinion of the court applicable to the facts of this case.

The leading Ohio cases discuss the matter of accession chiefly from the standpoint of the notice or knowledge, actual or constructive, which the vendor, lien claimant or mortgagee of the added part or accessory receives or is presumed to receive of a properly filed chattel mortgage on the

430

principal thing, and likewise from the standpoint of the notice or knowledge which the vendor, lien claimant or mortgagee of the accessory receives with reference to its attachment to the principal thing and the authorization or procuring of, or consent to or partaking in, such attachment.

The much discussed case of **Securities Company v Orlow, 107 Oh St 583**, is authority for the proposition that a repairman claiming a mechanic's lien against an automobile for accessory parts and labor added thereto, was charged with constructive notice of a chattel mortgage on file against the car and by reason thereof his lien was inferior and subject to the lien of the chattel mortgage. The court further held that the facts of the case and the terms of the mortgage did not imply consent on the part of the mortgagee to the repair of the car or authority on the part of the mortgagor to have the same repaired, though the terms of the mortgage required the mortgagor to have the same repaired in that the mortgagor was bound to keep the car in first-class condition and order at his own expense.

The case of **Continental Finance Co. v Gold Seal Tire Co., 6 O L A 26**, decided by the Court of Appeals of this district, holds that mortgaged tires, placed, without the knowledge of the mortgagee, upon a mortgaged automobile may be held by the mortgagee of the tires against the mortgagee of the automobile in an action of replevin. In this case the tire mortgagee failed to properly file its chattel mortgage before the plaintiff, mortgagee of the car, repossessed the car with the tires thereon. While the car was in the possession of plaintiff, defendant removed and possessed itself of the tires, The court in its opinion stressed the lack of knowledge on the part of the tire company that the mortgagor was going to place or had placed the tires on a mortgaged car, and held in effect that the tires, in the absence of knowledge by defendant that they were being attached to a mortgaged car, did not become accessions thereto. It does not appear from the court's decision whether or not the mortgage assigned to plaintiff contained an after-acquired property clause, but, assuming that it did not, the taking possession of the car by plaintiff had no significance or effect in investing plaintiff with title to or a lien on the tires. The court further held that plaintiff could not attack the validity of defendant's chattel mortgage after defendant had reduced the tires to possession for the reason that plaintiff did not stand in the position of a creditor who had obtained lawful possession of the tires by some legal process. In its opinion, the court says:

"It will be noted in this case that the Tire Company sold the tires in controversy to Johnson who was then the owner of the mortgaged automobile, but it does not appear that he tire company authorized consented to or even knew that the tires were to be placed upon the mortgaged automobile. This case, therefore differs from the case of **Securities Company v Orlow, 107 Oh St 583**, where the repairs in question were actually placed by the artisan upon the automobile. The artisan there was, as the court held, charged with constructive knowledge of the mortgage upon the automobile upon which the repairs were made. We have examined the case of Blackwood Tire & Vulcanizing Co. v Auto Storage Co., 133 Tenn 515, and Purnell v Fooks, 122 Atl. 901. In both cases the tires were placed upon the car by consent and with the knowledge of the party who afterward claimed ownership of the tires. The case is very different where the party selling the tires and afterwards claiming them under a chattel mortgage was not a party to the placing of the tires upon the mortgaged automobile, and was not even aware of their being so placed."

The court has examined the Blackwood and Purnell cases and neither one involves a chattel mortgage. The courts in both cases recognize the distinction between those cases where the title to the part or parts added remains in the vendor either by conditional sale contract or mortgage and those where the part added is sold outright to the possessor or mortgagor of the original thing.

In the Blackwood case, on page 519, the court says:

"The case of Clark v Wells (Vermont wheel and axle case) while apparently out of harmony with the underlying principle of the foregoing cases is, upon attentive examination found not to be so * * * While it was said in the opinion, that, unlike bolts and thills the repairs furnished did not become accessions to the principle chattel, yet the court further placed its decision on the ground that the repairer had retained title to the said wheels and axles. The statement of facts in the present case shows that the title to the tire casings was not retained by the Blackwood Tire & Vulcanizing Co. The case just referred to, therefore does not impugn the general principle that repairs made by a mortgagor or at his instance will inure to the benefit of the mortgagee."

In the Purnell case, 122 Atl. 901, the court held that truck wheels equipped with pneumatic tires sold absolutely and outright to the vendee of the truck separate and apart from the truck which had theretofore been sold on conditional sales contract completely equipped with wheels and tires, upon being attached to the truck to replace the other wheels and tires, became a part thereof by accession and belonged to the vendor upon repossession.

The axle case referred to above in the Blackwell case is, in the opinion of the court very much in point with the case at bar. It is reported in 45 Vermont 4. At page 7 of the decision the court says:

"We think the ordinary repairs upon a personal chattel, such as making new bolts, nuts, thills and the like, become accretions to, and merge in, the principal thing, and become the property of the general owner. But in this case, the wheels and axles constitute the running part of the wagon. They could be followed, identified and severed without detriment to the wagon, and appropriated to other use without loss. The plaintiff was the owner and never parted with the property. He had the right to resume possession when Harrington failed to pay the note. The property remained in him as perfectly as if, in the exigency of a broken wheel or axle he had loaned them for temporary use."

Corpus Juris, Vol. 1, page 384, announces the principle declared in the above case as follows:

"Ordinary repairs upon a personal chattel become a part thereof by accession, but the rule is otherwise where the repairs consist of parts which can be identified and severed, and it is agreed that the title thereto shall remain in the person making such repairs until they are paid for."

Careful examination of the leading cases outside of Ohio cited and quoted from herein, fails to disclose that it made any material difference in the decisions thereof insofar as the question of accession is concerned whether or not the mortgagee or vendor who sold the parts attached to the principal thing actually or constructively knew of the mortgage thereon, and the cases without exception failed to make any reference to the knowledge of the conditional vendor or mortgagee of the parts added of the general mortgage on the principal thing, though they expressly and impliedly recognized those cases where title was reserved in the mortgagee or vendor as exceptional and different cases from those where the parts added were sold outright without reserving title.

In the case at bar it is urged by counsel for defendant that the tires were sold outright to Campbell and thereafter mortgaged back to plaintiff, and that the legal and equitable title merged in Campbell for defendant's benefit. It is true that a few minutes elapsed between the purchases and the making out of the mortgages, during which time the tires were being attached to the car, but for all practical purposes the courts hold such transactions to be concurrent and contemporaneous.

The following authorities support this construction: Lumbert, et al. v Woodard, et al., 144 Ind. 335. Hammel v First National Bank of Hancock, 129 Mich. 176, in which the court says, at page 177:

"It is claimed by defendant that the record of the chattel mortgage is due notice to all who deal with the mortgagor as regards future acquired property, citing Eddy v McCall, 71 Mich. 503 (39 N. W. 734), and that this case is controlling in its favor. We cannot assent to this position. The sale by Hammel to Eliassen, and the giving of the chattel mortgage, were concurrent. They formed one transaction. Eliassen obtained no title freed from a lien. The only title he had was subject to the lien. It was not intended to give him any other title, and he did not expect to receive any other."

United States v New Orleans R. R., 12 Wall (US), page 362, in which Justice Bradley of the Supreme Court stated the following rule of law:

"The appellants contend, in the next place, that the decision upon the facts was erroneous; that the mortgages, being prior in date to the bond given for purchase money of these locomotives and cars, and being expressly made to include after-acquired property, attached to the property as soon as it was purchased and displaced any junior lien. This, we apprehend, is an erroneous view of the doctrine by which after-acquired property is made to serve the uses of a mortgage. That doctrine is intended to subserve the purposes of justice. A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor acquires; and, if he purchase property and give a

mortgage for the purchase money, the deed which he receives and the mortgage which he gives are regarded as one transaction, and no general lien impending over him, whether in the shape of a general mortgage, or judgment, or recognizance, can displace such mortgage for purchase money."

The three cases last hereinabove cited and quoted from are in effect authority for the proposition that title does not pass to the mortgagor of a specific thing attached to, mingled with or used in connection with the principal thing so as to invest the general mortgagee of the principal thing with title of the specific thing when the deed, bill of sale and purchase money mortgage are executed and delivered as a part of the same transaction and contemporaneously.

Corpus Juris, Vol. 11; page 647, under the title, "After acquired property," states the rule as follows:

"A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands, and hence the mortgagee will take it subject to all prior or superior liens. Hence a mortgage of property thereafter to be acquired will not have priority over the rights of a vendor retaining title under a valid conditional sale of such property, since the mortgagor acquires no title thereto."

Fosdick v Schall, 99 U. S. 235.

Smith v Hill, 17 N. M. 415.

General Electric Co. v Transit Equipment Co., 57 N. J. Eq. 460. Syllabi 1 and 4.

Corpus Juris, Vol. 11, on page 648, under the title, "Purchase Money Mortgages," further states:

"A mortgage for the purchase price of an article executed to the seller by the buyer simultaneously with the acquisition of title is ordinarily accorded priority over claims which would outrank an ordinary mortgage, as for example * * * a previously executed mortgage covering the same property." * * * "While there is authority to the contrary, a purchase money mortgage executed simultaneously with the acquisition of title is superior to an antecedent mortgage covering after-acquired property."

Walton v Shakespear, (Ga.) 88 S. E. 906.

Luke v Cason, 7 Ga. A. 183.

Ames v Trenton Brewing Co., 56 N. J. Eq. 309.

Walker v Vaughn, 33 Conn. 577.

Tipps v Gay, (Tex. Civ. A.) 146 S. W. 306.

Brunswick, etc. Co. v Martin, 20 Mo. A. 158.

Frank v Denver etc. R. R. Co. 23 Fed. 123.

At this juncture, it is important and essential to the decision of this case to differentiate and distinguish the Orlow case, the Gold Seal Tire case and the case at bar on their facts.

The facts of said three cases when compared show that neither in this case nor the Gold Seal case did the tire companies claim a lien on the entire car for furnishing tires therefor as did the mechanic for furnishing repairs and parts in the Orlow case, nor did the tire companies in the Gold Seal case and the case at bar furnish accessories, parts and repairs which could not be severed from the car without material injury thereto as did the mechanic in the Orlow case, nor did said tire companies place the tires on the mortgaged cars without reserving title thereto as did the mechanic the parts in the Orlow case. Comparison of the facts in the Gold Seal case and the case at bar shows that the tire company in the Gold Seal case neither attached the tire to the mortgaged car nor constructively knew that the same were being attached at the time it took the mortgage thereon as did the plaintiff in this case. Plaintiff, however, in the case at bar properly filed its chattel mortgages on the tires before the same were taken into possession by defendant, whereas in the Gold Seal case the tire company failed to properly file its mortgage before the Finance Company repossessed the car with the tires attached.

The Court of Appeals in the Gold Seal case obviously felt it necessary to distinguish that case on the facts from the Orlow case and in so doing emphasized the tire company's lack of knowledge of the attachment of the tires to the mortgaged car, so as to equitably protect the tire dealer against what it conceived to be the far-reaching effects of constructive notice of the Finance Company's mortgage, particularly in view of the fact that the Tire Company had failed to properly file its chattel mortgage. The Court of Appeals in effect held that neither the Gold Seal Tire Company nor the Continental Finance Co. had constructive notice of each other's mortgages, and the fact that the Finance Company took possession of the car with the tires thereon had no legal significance for the reasons that the Tire Company was not constructively charged with notice of the Finance Company's mortgage, and further, that the Finance Company did not gain possession of the tires through a legal process. In the case at bar both plaintiff and defendant were constructively charged with notice of each other's mortgages at the

time defendant repossessed the car with the tires attached.

It follows, therefore, that the question of accession in this case is determined by the following considerations:

1. Were the tires and tubes readily detachable and severable from the car without injury thereto?

2. Was title to the tires and tubes reserved by plaintiff?

(a) Was the making of the sales by plaintiff and the giving of the mortgages by Campbell contemporaneous, or, was there a merger of legal and equitable titles to the tires in the mortgagor for the benefit of defendant as mortgagee of the car?

(b) Was there an implied waiver of title by the plaintiff, as mortgagee, in placing the tires on the car?

3. Did plaintiff have constructive notice of defendant's mortgage on the car at the times the tires were sold, and if so, what effect, if any, did such notice have?

With reference to the tires being severable, it is conceded by any reasonable person that an automobile tire can be readily identified by size, serial number and make; that it can be easily attached to and readily removed from the wheels of a motor car; that it in no way when removed, affects the value, physical condition or function of the part or parts to which it is attached. It being the only exterior accessory constantly in contact with the ground, it wears out in the normal course of events more rapidly than other exterior parts of the car, and consequently needs to be replaced by tires of like kind several times during the normal life of a car. It is quite true that other parts of a car, such as spark plugs, fan belts and brake lining need to be replaced several times in the life of a car, but such articles are of small value and are not sold or purchased on the open market in the same sense as tires. On the contrary, they are usually placed on and in the car incidental to repair work. The mortgagee of a car is presumed to know that tires will wear out and must be replaced by other tires purchased by the mortgagor, particularly so in the instant case for the reason that Campbell purchased the tires from plaintiff within one week after he had purchased the car from defendant.

New tires placed on cars are necessarily substituted for and replace old, worn out tires, and such substitution must be distinguished from repair work, such as vulcanizing or retreading, on tires attached to the car at the time it was sold to the possessor and mortgagor.

As to plaintiff reserving title to the tires and tubes, the authorities hereinbefore quoted and cited amply support this court in its opinion that the sales of the tires and tubes and the execution of the mortgages thereon were concurrent and contemporaneous and that consequently there was not a merger of legal and equitable title in Campbell, the mortgagor, for the benefit of defendant as mortgagee. In this respect the case at bar and the Gold Seal case are to be distinguished from the Orlow case, as the parts and repairs in the latter case obviously became a part of the car by accession, and title thereto passed through the mortgagor to the mortgagee of the car and inured to said mortgagee's benefit. It is apparent from the foregoing that the defendant could obtain no better title, if any, to the tires and tubes purchased than Campbell received at the time of the purchase, and since plaintiff effectively reserved title defendant obtained no title thereto, unless by some legal anomaly, plaintiff impliedly waived its title to the tires in placing the same on the car. This court is unable to conceive under the facts of this case, admitting that plaintiff had constructive knowledge of defendant's mortgage, how there can be fairly implied any intention on the part of the plaintiff Tire Company to waive its title to the tires and make the same a part of the car by accession. On the contrary, plaintiff's intention in reserving title in itself by mortgage was rather to protect itself against the existence of a general mortgage against the car to which the tires were attached.

As to whether or not plaintiff had constructive notice of defendant's mortgage at the times the tires were purchased, and if so, what was the effect thereof,—the facts show that the first tire and tube were purchased by Campbell from plaintiff two days before defendant filed its chattel mortgage. Plaintiff, consequently, was not charged with constructive notice of defendant's mortgage at the time of the first purchase. At the time the second tire and tube were purchased, however, defendant's mortgage was properly on file and plaintiff was constructively charged with notice of its contents. It follows that the effect of constructive notice, if any, on plaintiff's act of attaching its merchandise to Campbell's car is confined to the second tire and tube. To determine the effect of such constructive notice, if any, it is necessary to refer to the contents of defendant's mortgage. As to the provision therein requiring Campbell to obtain defendant's written consent, to-wit,—

"That the mortgagor agrees he will have no repairs made or supplies furnished for said automobile other than by himself, without the written consent of the mortgagee or his assigns." * * *

The court is of the opinion that such provision did not make it plaintiff's duty to inquire of Campbell if he had obtained or was going to obtain the written consent of defendant. On the contrary, the plaintiff had a right to assume that Campbell did or would fulfill his contractual obligation by obtaining defendant's written consent, particularly since he agreed in the mortgage to keep the car in first-class condition. As to the provision stipulating that—

"Any person making repairs to or furnishing supplies for said automobile shall have no lien superior to this mortgage."

The court is of the opinion that the assertion that "no other person shall have a lien superior to this mortgage" can not determine priority or preference as that is a matter of law for a court to determine. As a matter of fact, this provision has particular reference to liens which might be claimed against the entire car. It is obviously the intention of defendant in both provisions to negative any consent on its part to a transaction wherein a person other than Campbell, the mortgagor, furnishes supplies or repairs for the mortgaged car, so as to protect itself against mechanic lien claims which might be asserted against the entire car. Such provision operates likewise as a disavowal or repudiation by defendant of plaintiff's and Campbell's act in attaching the mortgaged tires to the car without written consent, and to some extent indicates an intention on the part of defendant not to recognize the tires as a part of the car.

As hereinbefore indicated, the Court of Appeals in the Gold Seal Tire case discussed to some extent the effect of actual or constructive notice by the tire dealer of the general mortgage on the car to which the tires were attached. The court held that the tires were not accessories so long as the Tire Company did not actually know that the tires were being placed on the specific car mortgaged to the assignor of the Finance Company, and that such lack of actual knowledge rendered the Tire Company immune from the supposed effects of constructive knowledge. Yet the court did not go so far as to hold that the tires would have been accessions if the dealer had actual knowledge that the tires were being placed on a mortgaged car. As a practical

matter, this court fails to see what difference it makes if the Tire Company does have actual or constructive notice that the tires are being placed on a specific mortgaged car at the time of sale, so long as it properly reserves title in itself by chattel mortgage and files the same as required by law before the mortgagee of the car repossesses the same together with the tires.

**Nerzog v National Supply Company, 18 C. D. 112.**

From the foregoing discussion, it follows that whether a part becomes an accession is not determined to a great extent by fixed abstract definitions and standards but depends upon the facts of the individual case bearing on title and the intention of the parties plus the test as to whether the parts can be severed without damage to the principal thing.

Judge Scarlet of the Franklin County Common Pleas Court of this state, in the case of Ohio Finance Co. v Wells, very aptly said:

"The mere act of putting on the tires does not invoke the doctrine of accession. There must be something more and that could only be the intention of the vendor of the tires to waive his right and title, or a passing of the title in the tires to the owner of the automobile and consequent merger in effect of the two interests or titles in one person to the benefit of the person's first mortgage or the first mortgagee of the principal part of the combined product. The Obiter in the Court of Appeals opinion relied upon by the plaintiff in error is the implied waiver by the tire vendor and mortgagee in placing the tires upon the car. It is argued that the same implication is present here. The court is of the opinion that this implication is clearly negatived in this case by the fact that the Wells Company never parted with the title. The fact that the title to the tires did not pass also prevented anything in the nature of a merger of title which might operate for the benefit of the first mortgagee," etc.

The court, therefore, is of the opinion that the tires and tubes sold by plaintiff to Campbell were readily detachable and severable without injury to the car, that title to the tires and tubes was reserved in plaintiff and though plaintiff had constructive notice of defendant's mortgage at the time the second tire and tube were sold, such notice had no effect in expressly or impliedly divesting plaintiff of or investing defendant with title to said second tire and tube as an accession.

The court is further of the opinion that

defendant's chattel mortgage contains no provision amounting to an after-acquired property clause, but assuming that it does, defendant did not and could not perfect title to or lien on said tires by reducing them to possession for the reason that defendant was charged with constructive notice of plaintiff's mortgage thereon.

From the foregoing authorities and reasoning, it follows that the tires and tubes did not become accessions to the car nor did they become subject to defendant's mortgage as after acquired property reduced to possession. Consequently, plaintiff's lien and right of possession to all the tires and tubes attached to the car at the times defendant reduced them to possession and sold them was superior and senior to the alleged right or lien of defendant.

As to the value of the two tires and tubes at the times the same were taken into possession and sold by defendant, the court finds that the reasonable market value thereof was $17.50.

The court, therefore, finds that plaintiff should recover from defendant for the conversion of said tires and tubes the sum of $17.50 with interest from the 29th day of June, 1929.