No. 17,521.

## LUMBERT ET AL. *v.* WOODARD ET AL.

MORTGAGE.—*Priority of Mortgages.—Street Railroad.*—A mortgage executed by a railroad company upon its railway property alone, will not attach to an electric plant subsequently purchased by the company, so as to take precedence over a mortgage on such plant to the vendor to secure the purchase-price.

CHATTEL MORTGAGE.—*What Constitutes.—Vendor's Lien.*—An instrument stating that one of the parties thereto has parted with the ownership of certain property, and that the other party owes a specified balance thereon, and that the former intends to maintain a "vendor's lien" on the property for such debt, will be construed as a chattel mortgage, and when properly recorded constitutes a valid lien.

EVIDENCE.—*Parol, of Written Lease.*—Parol evidence of the contents of a written lease, sold by plaintiff to defendant, is admissible, where a motion was made by plaintiff to require defendant to produce it, and the affidavit of defendant showed that it was not in its custody.

From the Elkhart Circuit Court.

*H. D. Wilson* and *W. J. Davis,* for appellants.

*Stephens & Stephens, Chamberlain & Turner* and *J. M. Van Fleet,* for appellees.

HACKNEY, C. J.—On petition by appellant Lumbert, one Charles W. Fish, was appointed receiver for the Elkhart Electric and Railway Company, a corporation formed by the consolidation of the Citizens' Railway Company and the Elkhart Electric Company, and the appellees, Woodard and Proctor, by consent of the court, sued said receiver upon certain notes, held by them severally, and as alleged a written lien securing said notes, for $8,000.00, executed by said Elkhart Electric Company, and alleged to have been assumed by the new company.

Upon the motion of the receiver, John Cook, trustee for the holders of bonds to the amount of $25,000.00, secured by mortgage, and executed by said Citizens' Railway Company, and one Frederick W. Miller, trustee for the holders of $65,000.00 of bonds, secured by mortgage, executed by said new company, were made parties. Each of said trustees, Cook and Miller, interpleaded and sought the foreclosure of the mortgages held by them respectively, and alleged the seniority of their mortgages severally to any lien of Woodard or Proctor.

Upon issues formed and trial had, with special finding and conclusions of law, decree was rendered declaring the alleged lien of Woodard and Proctor senior to the mortgages held by said trustees. The sufficiency of cross-pleadings by Woodard and Proctor severally, the correctness of the court's conclusions of law and the ruling denying a new trial are all urged, upon assignment of error and argument, for the reversal of the judgment of the circuit court. The principal question between the parties is as to the effect of the instrument asserted by Woodard and Proctor to constitute the senior lien so held by the trial court. That instrument was as follows: "In consideration of the sum of $17,000.00, to me in hand paid by the Elkhart Electric Company, I have bargained and sold, and by these presents do hereby sell and convey to said Electric company, all of the electric-light plant in Elkhart, Indiana, including buildings, water wheel, shafting, dynamos, lamps, poles, wires, and all other property, rights and franchises in any manner pertaining to or connected with said plant, it being the only electric plant now operated and located in the city of Elkhart, Indiana. This sale and conveyance to include a transfer and full assignment of all my right, title and interest in the water

power and the lease with the Elkhart Hydraulic Company, with which said plant is now operated.  And I hereby certify that said plant is owned solely by myself; that the same is clear and free from all incumbrances whatever.  And I hereby guarantee to defend the same against all lawful claims held or claimed by any persons whatever prior to this date, claiming under or through me.  In this sale and transfer it is distinctly understood and agreed that I am [to] retain and do hold a vendor's lien on all of said property and plant, and all new additions thereto made by said Elkhart Electric Company, to secure the payment of $13,000.00 balance of purchase money due on said plant, evidenced by sundry notes of various amounts, aggregating said amount of $13,000.00, all bearing even date herewith and drawing interest at the rate of 8 per cent. per annum, payable annually, and all attorneys' fees, all payable at the First National Bank of Elkhart, Indiana.  One note for $2,000 due in six months from date, and four notes for $2,750 each, due respectively on the second day of January, 1890, 1891, 1892 and 1893, all signed by said Elkhart Electric Company and payable to the order of Marion C. Proctor.  Witness my hand and seal, this 8th day of January, 1889.

MARION C. PROCTOR.  [SEAL.]

"The Elkhart Electric Company hereby accepts the terms and conditions of the foregoing instrument and agrees to all its obligations therein contained to execute and perform.  Witness the name of said company, which is hereto subscribed, by order of its board of directors, by O. N. Lumbert, its president, and E. P. Willard, its secretary, January 8, 1889.

ELKHART ELECTRIC COMPANY.

By O. N. LUMBERT, President.

By E. P. WILLARD, Secretary.

STATE OF INDIANA, }
ELKHART COUNTY.      } ss.

"Before me, E. C. Bickel, a notary public of said county, personally came Marion C. Proctor and acknowledged the execution of the annexed instrument.

"Also, came the Elkhart Electric Company, by O. N. Lumbert, its president, and E. P. Willard, its secretary, and acknowledged the execution of the foregoing and annexed instrument.

"Witness my hand and official seal this 8th day of January, 1889.

"E. C. BICKEL, Notary Public. [SEAL.]"

This instrument was recorded in the chattel mortgage record of Elkhart county, two days after its execution, to-wit: January 10, 1889, the county named being that in which the parties resided. The notes held by Woodard were two of those referred to in said instrument, and that held by Proctor was another of the same series. The property so included in said instrument, and certain additions thereto, are particularly described in the cross-pleadings and special finding of the court.

The mortgage to Cook, trustee, was executed, not upon that covered by the foregoing instrument, but upon the street railway property. It was executed in May, 1886, but the property of the railway company was consolidated with that of the electric company in March, 1891. The alleged lien of Woodard and Proctor is, by the conclusions of law, found and the judgment of the circuit court applied only to the property covered by the above copied instrument and subsequent additions thereto.

The supposed injustice of maintaining a lien in favor of Woodard and Proctor, as against Cook, trustee for the bondholders, having a lien upon the rail-

way property, is suggested upon the assertion that the electric plant was made new and increased from the proceeds of a sale of the railway property. This assertion is not sustained by any finding of the court, or allegation of the pleadings in question. All of the property of the new company, railway and lighting plants combined, was sold by the receiver for $21,000.00, and the court expressly found that the proportion of said sum derived from the electrical plant alone, and consisting of the items covered by said copied instrument and the additions made thereto, was twelve twenty-firsts (12-21), or $12,000.00. It was against this sum that said lien was directed, and not against the parts of said sum representing nine twenty-firsts of said purchase money, or the proportionate value of the railway property. If the alleged lien of the appellees, Woodard and Proctor, is valid, it would be an injustice to them to permit the lien of Cook, trustee, which was alone upon the railway property, to attach to the electric plant and take precedence over their lien upon the electric plant.

The validity of their alleged lien is attacked by the appellants. One argument is that a "vendor's lien" upon personal property is unknown to the law and applies alone to real estate; that a "vendor's lien" is never an express lien, but arises by implication. The lien in the present instance is not an implied lien, and its validity must depend alone upon the expressed provisions of the instrument. It is not, therefore, that character of lien which equity implies for the protection of the vendor of real estate. Treating it as an attempt to create a lien upon personal property, counsel for appellant maintain that it is not authorized by the statute, R. S. 1894, section 6638 (R. S. 1881, section 4913), which provides that "No assignment of goods, by way of mortgage, shall be valid against any

other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged, as provided in case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof."

Of this proposition, counsel for appellants say: "Unless this instrument  *  *  is a chattel mortgage, then it cannot constitute any lien upon the property, because the property was not delivered to the purchaser, or, in other words, the pretended mortgagor, the seller, or pretended mortgagee, parted with possession altogether. Now, a chattel mortgage, to be good as a mortgage, must claim to be given as security for a certain debt. This don't claim anything of the kind."

If we understand this argument, it is that Proctor, having parted with possession, could not create a lien, could not occupy the position of mortgagee, and that the instrument is not a mortgage, since it fails to recite that it is executed as a security for a certain debt. In construing the instrument we must look to the intention of the parties. That intention, as made clearly manifest, was to give evidence that Proctor had parted with the ownership of the electric plant to the electric company; that the company owed a balance of $13,000.00, the debt being particularly described, and that Proctor intended to maintain a lien upon the property for said debt. While this intention is expressed by Proctor alone, the instrument contains, on the part of the company, a paragraph expressly accepting and agreeing to the terms imposed by Proctor, thereby giving mutuality of purpose in the intention so expressed. Of course, Proctor's lien does not depend upon his retention of possession. It rather

depends upon the expressed provisions of the instrument, properly recorded, as the statute requires. Recording is, by our statute, made the substitute for possession, where possession is not held by the creditor who asserts an interest by way of lien or mortgage. Both the possession of the property and the recording of the instrument of assignment are not essential to the validity of the lien.

Our statute prescribes no form of chattel mortgage, and that which may be deemed reasonably to express the intention to the parties to secure a particular debt, indicating the property and conforming to the statutory requirements as to acknowledgment and recording should be deemed a chattel mortgage. It is the general rule, as expressed in many of the States, that if it appears, from the instrument that the parties intended it as a security, it is a mortgage. Cobby Chattel Mortgages, sections 12 and 79; *Cooker* v. *Brock*, 41 Mich. 660; *Weed* v. *Mirick*, 62 Mich. 414; *Gage* v. *Chesebro*, 49 Wis. 480; *Peck* v. *Merrill*, 20 Vt. 686; *McGregor* v. *Chase*, 37 Vt. 225; *Low* v. *Wyman*, 8 N. H. 536; *Lawrence* v. *Neff*, 41 Cal. 566; *Dunning* v. *Stearns*, 9 Barb. 630; *Ellington* v. *Charleston*, 51 Ala. 166; *Reynolds* v. *Ellis*, 103 N. Y. 116; *Byrd* v. *Wilcox*, 8 Baxt. 65; *Langdon* v. *Buel*, 9 Wend. 80; *Harris* v. *Jones*, 83 N. C. 317; *Plummer* v. *Shirley*, 16 Ind. 380; *Sidener* v. *Bible*, 43 Ind. 230; *Davidson* v. *King*, 47 Ind. 372.

In *Sidcner* v. *Bible, supra*, the form of mortgage used was such as was in use for mortgaging real estate. It was said by this court: "Still, we think, we must regard it as a valid mortgage of the chattels in question, so far as its form is concerned. It is sufficient in respect to its form to vest in the mortgagee an interest in the property according to the apparent intent of the parties."

Where no special form is required it is difficult to observe why the manifest intention of the parties should be defeated because more appropriate words might have been chosen. We have no hesitancy in holding the instrument sufficient to constitute a mortgage. The word "vendor" cannot defeat this conclusion. In its ordinary significance, it is held by the lexicographers to mean *one who sells*, regardless of the character of the property sold.

The lower court admitted parol evidence of the contents of a certain lease to Proctor, and by him sold to the electric company. The record disclosed a motion by Proctor to require the appellee company to produce the lease, and the affidavits of the company's principal officers showed that it was not in the custody of the company, and the impression that it had been cancelled and destroyed. Proctor testified, at the trial that he had turned it over to the electric company at the time of the sale. As its existence was a question for the court we think this showing, *prima facie*, excused the appellee, Proctor, from producing the original. It may be doubted, however, if the contents were not subject to proof by parol without proof of loss since that instrument and its contents were but collaterally in issue. *Coonrod* v. *Madden*, 126 Ind. 197.

Finding no error in the record, the judgment of the circuit court is affirmed.

Filed March 25, 1896.