The CITY OF OKLAHOMA CITY, a Municipal Corporation, Appellant,

v.

The OKLAHOMA TAX COMMISSION, Cindy Rambo, Chairman, Appellees.

No. 68405.

Supreme Court of Oklahoma.

March 27, 1990.

As Corrected May 1, 1990.

---

Robert D. Allen, Municipal Counselor, Diane Davis Huckins, Thomas S. Jones, Assistant Municipal Counselors, Oklahoma City, for appellant.

General Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellees.

KAUGER, Justice.

The issues presented are: 1) whether a municipality which contracts with the Oklahoma Tax Commission for the collection of municipal taxes under the authority of 68 O.S.Supp.1986 § 2702 [1] is entitled to interest earned by taxes deposited in the State Treasury; and 2) if the municipality is entitled to investment interest, whether it may

---

1. Title 68 O.S.Supp.1986 § 2702 provides:

"The governing body of any incorporated city or town and the Oklahoma Tax Commission are authorized and empowered to enter into contractual agreements whereby the Oklahoma Tax Commission shall have authority to assess, to collect and to enforce any taxes or, penalties or interest thereon, levied by such incorporated city or town, and remit the same to such municipality. Said assessment, collection, and enforcement authority shall apply to any taxes, penalty or interest liability existing at the time of contracting. Upon contracting, the Oklahoma Tax Commission shall have all the powers of enforcement in regard to such taxes, penalties and interest as are granted to or vested in the contracting municipality. Such agreement shall provide for assessment, collection, enforcement, and prosecution of such municipal tax, penalties and interest, in the same manner as and in accordance with the administration, collection, enforcement, and prosecution by the Oklahoma Tax Commission of any similar state tax. The municipality shall agree to refrain from any assessment, collection, or enforcement of the municipal tax except as specified in the agreement. Such agreement shall authorize the Oklahoma Tax Commission to retain an amount not to exceed one and three-fourths

recover interest deposited to the state's general revenue fund. We find that: 1) the interest earned on municipal sales tax revenues is an accretion or increment to the principal tax. Pursuant to the Okla. Const. art. 10, § 19, the total i.e., principal and interest, must be expended for the purpose levied; and 2) because the fund representing interest earned on the investment of the municipal sales taxes has been appropriated, it is not recoverable.[2]

## FACTS

Under a contract executed pursuant to 68 O.S.Supp.1986 § 2702, the appel-

percent (1¾%) as a retention fee of municipal tax collected for services rendered in connection with such collections. All funds retained by the Oklahoma Tax Commission for the collection services to municipalities shall be deposited in the Oklahoma Tax Commission Revolving Fund in the State Treasury.

Provided that the Oklahoma Tax Commission and the governing body of any incorporated city or town may enter into contractual agreements whereby the municipality would be authorized to augment the enforcement, collection and prosecution of the municipal tax in those contracting municipalities. Such agreements shall provide that the municipality and the Oklahoma Tax Commission may exchange necessary information to effectively carry out the terms of such agreements. The municipality, its officers and employees shall preserve the confidentiality of such information in the same manner and be subject to the same penalties as provided by Section 205 of this title, provided that the municipal prosecutor and other municipal enforcement personnel may receive all information necessary to augment the enforcement and prosecution of municipal sales tax ordinances. Any sum or sums collected or required to be collected pursuant to a municipal sales tax levy shall be deemed to be held in trust for the municipality, and, as trustee, the collecting vendor shall have a fiduciary duty to the municipality in regards to such sums and shall be subject to the trust laws of this state. Any vendor who fails to remit the municipal sales tax after the tax has been collected from the consumer, and appropriates the tax held in trust to his own use, or to the use of any person not entitled thereto, without authority of law, shall be guilty of embezzlement."

This section was amended effective October 1, 1989, see note 18, infra.

2. See note 20, infra.

3. Title 62 O.S.Supp.1986 § 7.1 provides in pertinent part:

lee/Oklahoma Tax Commission (Tax Commission) collects sales taxes for the appellee/City of Oklahoma City (City). The tax revenues are deposited with the State Treasurer in the Tax Commission's revolving fund[3] where they are comingled with other tax collections. The State Treasurer invests the monies under the guidelines of 62 O.S.1981 § 89.2.[4] Title 62 O.S.1981 § 203[5] requires that the interest earned from these investments be deposited in the general revenue fund. The State Treasurer holds the municipal taxes for approximately thirty days. On the tenth of each month, the Tax Commission remits munici-

"A. There is hereby created in the official depository in the State Treasury an agency clearing account for each state officer, department, board, commission, institution or agency of the state, hereinafter referred to collectively as state agencies.

B. It shall be the duty of each state agency, officer or employee, to deposit daily in the agency clearing account, or agency special account, established under Section 7.2 of this title, all monies of every kind, including, but not limited to:

1. Tax revenues ...."

Section 7.1 was amended effective July 1, 1988. The quoted portion of the 1986 statute is identical to its amended counterpart.

4. Title 62 O.S.1981 § 89.2 provides:

"The Treasurer is directed to invest the maximum amount of funds under his control consistent with what in his judgment constitutes good business practices; provided that the Treasurer shall keep eighty percent (80%) or more of the money under his control invested during each fiscal year based on the average daily balances during said fiscal year in a manner consistent with Section 1 of this act."

This section was amended effective July 1, 1987. The new statute still requires the Treasurer to invest state funds but removes the discretionary language concerning good business practices and provides a detailed outline of investments the Treasurer may make.

5. Title 62 O.S.1981 § 203 provides:

"All monies that may come into the State Treasury, pursuant to the provisions of this act, together with all amounts that may be received by the State Treasurer as interest on average daily bank balances shall be apportioned and credited to the General Revenue Fund for the current year: Provided that the provisions hereof shall not apply to interest received on deposits from funds under the control of the Commissioners of the Land Office."

Section 203 was amended effective July 1, 1988 to include investment income or interest on

pal sales taxes collected for the previous month.[6] After deducting the contractual retention fee of 1½% allowed by § 2702, the Tax Commission disburses the entire amount collected to the City. However, the Tax Commission does not pay the City interest on the taxes collected; and there is no evidence in the record concerning the amount of interest earned by the Treasurer's investment of the sales tax.

The City filed a declaratory judgment action on September 2, 1986, seeking to establish its right to interest earned on the investment of the sales taxes. The City also asked that the Tax Commission and State Treasurer be enjoined from appropriating and withholding the interest. On September 24, 1986, the Tax Commission filed a motion to dismiss, which was granted, without prejudice to refiling, on November 5, 1986. Thereafter, the City filed an amended petition asserting that the Okla. Const., art. 10, § 19, prohibited the Tax Commission from retaining interest earned from investment of the sales taxes. The City alleged that the Tax Commission breached the contract by retaining more than 1½% of the municipal sales tax reve- nues as specified in the contract; that it permitted the commingling of municipal revenues with State revenues; that it violated the State Constitution by converting the interest or accretion to principal which belonged to the City to State purposes; that it failed to negotiate interest even though demand was made; and that it breached a fiduciary duty to the City by keeping improper records.

On January 15, 1987, the Tax Commission filed a motion to dismiss the amended petition with prejudice, and on February 5, 1987, the trial court sustained the Tax Commission's motion finding that the amended petition failed to state a claim for breach of contract. The Court of Appeals reversed the trial court, holding that because the interest was an accretion to the principal, the City was entitled to interest earned by investment of the tax revenues. The Court of Appeals also characterized the Tax Commission as a "vendor" and determined that the collected tax was deemed to be held in trust for the City.[7] We granted certiorari on November 8, 1989 to address a question which presents a significant question of public interest.

funds deposited to the credit of the Constitutional Reserve Fund.

6. Title 62 O.S.Supp.1986 § 7.1 requires the Tax Commission to make monthly payments to the City for sales taxes collected. It provides in pertinent part:

"... D. At least once each month each state agency shall transfer monies deposited in agency clearing accounts to the various funds or accounts, subdivisions of the state, or functions as may be provided by statute ..."

Section 7.1 was amended July 1, 1988. The quoted portion of the 1986 statute is identical to its amended counterpart.

7. We do not agree with the Court of Appeals characterization in the companion case, *City of Oklahoma City v. State*, 789 P.2d 1300 (Okla. 1990), also decided today, of the Tax Commission as a "vendor." This appellation is not supported by 68 O.S.Supp.1986 § 2702 which refers to a "collecting vendor" and a "vendor" who fails to remit taxes collected from the consumer. Such a vendor is subject to the charge of embez-

zlement. Because "vendor" is not defined within the statute, it is given its plain and ordinary meaning. *Matter of Income Tax Protest*, 751 P.2d 1070, 1073 (Okla.1988); *Hess v. Excise Bd.*, 698 P.2d 930, 932 (Okla.1985). Vendor ordinarily means one who sells. *State v. Bristow*, 131 Iowa 664, 109 N.W. 199–200 (1906); *Lumbert v. Woodard*, 144 Ind. 335, 55 Am.St.Rep. 175, 43 N.E. 302, 304 (1896). See also, *Oberlander v. Porterfield*, 28 Ohio St.2d 171, 277 N.E.2d 198, 200 (1971); *Rockower Bros., Inc. v. Comptroller*, 240 Md. 379, 214 A.2d 581, 586 (1965). It is clear from the plain meaning of the word "vendor" in § 2702 that it refers to the merchant who collects the tax from the consumer. In some instances, when money enters the state treasury to be held or paid over according to law, it is held in trust. However, when the Legislature referred to a trustee in § 2702, the language used, "as trustee, the collecting vendor," is clear. The vendor is deemed to be holding the taxes collected from the consumer in trust for the municipality. See, *City of Bisbee v. Cochise County*, 44 Ariz. 233, 36 P.2d 559, 563 (1934).

## I

**THE INTEREST EARNED ON MUNICIPAL SALES TAX REVENUES IS AN ACCRETION OR INCREMENT TO THE PRINCIPAL TAX. PURSUANT TO THE OKLA. CONST. ART. 10, § 19, THE TOTAL—PRINCIPAL AND INTEREST—MUST BE EXPENDED FOR THE PURPOSE LEVIED.**

■ The Tax Commission asserts that interest earned by investment of municipal sales taxes can be spent for purposes other than those for which the taxes were levied. The City, relying on the Okla. Const. art. 10, § 19, counters that because the interest earned by investment of the tax revenues is an accretion to the principal, the interest must be used for the same purpose as the tax. The disposition of the question— whether the interest earned on municipal sales tax revenues follows the principal—is controlled by the Okla. Const. art. 10, § 19 which provides:

Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.

On certiorari, the Tax Commission cites Application of *State of Oklahoma Bldg. Bonds Comm'n,* 202 Okla. 454, 214 P.2d 934, 937–38 (1950) to support its position that art. 10, § 19 is applicable only to the

tax revenues, and not to the interest income earned thereon. We do not agree. *Oklahoma Bldg. Bonds* involved an original proceeding for approval and issuance of state bonds devoted to the upkeep of state buildings. A protest had been filed concerning the authority of the State Treasurer to invest state monies in the bonds. This Court found that the purchase of the bonds with public monies was for investment purposes; and that the investment was not a diversion of the funds, or a use for a purpose other than that for which the monies were collected. The issue presented here—whether interest earned on a tax levy is an accretion or increment of the investment which must be expended for the same purpose as the levied tax—was not involved.

The City has consistently maintained that art. 10, § 19 and *Independent School Dist. No. 1 v. Board of County Comm'rs,* 674 P.2d 547, 550 (Okla.1983), govern. In *Independent School Dist.,* we held that under 70 O.S.1981 § 691 [8] interest earned on the investment of school funds must be deposited to a school district account. The Tax Commission attempts to distinguish *Independent School Dist.* on the basis that a specific statute dictated that the interest follow the principal invested. We would be inclined to agree had the Court not also rested its decision on a broader and more fundamental basis, the Oklahoma Constitution. In *Independent School Dist.,* we noted the rule of law that, absent a special statutory provision, interest is an accretion or increment to the principal fund earning it.[9] Recognition of the rule was premised on the mandate of art. 10, § 19 that taxes

---

8. Title 70 O.S.1981 § 691 provides:

"The county treasurer shall immediately upon the passage and approval of this act place to the credit of the common school fund of the county for distribution, as all other common school funds, all the interest money now on hand accrued on the average daily balances of money deposited with banks in pursuance of the provisions of the county depository law: All such interest monies hereafter collected shall at the close of each month be apportioned and credited to the common school fund of the county."

9. *City of New Orleans v. Fisher,* 180 U.S. 185, 197, 21 S.Ct. 347, 352, 45 L.Ed. 485, 492 (1901); *Board of Educ. v. Salt Lake County,* 659 P.2d 1030, 1036 (Utah 1983); *State ex rel. Bd. of County Comm'rs v. Montoya,* 91 N.M. 421, 575 P.2d 605, 607 (1978); *State Highway Comm'n v. Spainhower,* 504 S.W.2d 121, 126 (Mo.1973); *Cross of Malta Bldg. Corp. v. Straub,* 257 Or. 376, 476 P.2d 921, 924 (1970); *Board of Educ. v. Hensley,* 665 P.2d 327, 331 (Okla.App.1983); *Pomona City School Dist. v. Payne,* 9 Cal.App.2d 510, 50 P.2d 822, 825 (1935). See also, *City of Bisbee v. Cochise County,* note 7, 36 P.2d at 562, supra; Annot., "Rights & Liabilities of Munici-

levied and collected for one purpose may not be devoted to another purpose. We recognized in *Independent School Dist.* that, even in absence of a special statutory provision, *interest earned from taxes earmarked for a specific purpose must follow the principal.*

Here, the interest from municipal taxes earmarked for use by Oklahoma City is being diverted to the state's general revenue fund. The teaching of *Independent School Dist.* is that the interest becomes a part of the principal tax. Because art. 10, § 19 prohibits the diversion of such taxes, the interest earned on municipal sales tax revenues is properly attributable to the municipality levying the tax.

The Tax Commission also argues that *Independent School Dist.* is not applicable because the interest is not an accretion to principal if legislation provides for the separation of the interest from the principal. The Tax Commission contends that 62 O.S. 1981 § 203 [10] requires that interest earned on average daily bank balances be deposited to the general revenue fund. However, if § 203 is interpreted to require that a tax levied for municipal purposes be diverted to state coffers, it contravenes art. 10, § 19. Such an interpretation would render the statute unconstitutional.

 Whenever possible, statutes will be interpreted to avoid constitutional con-

flict. If a statute is susceptible of two constructions—one which will uphold the statute, and one which will strike it down—it is our duty to apply constitutional construction.[11] All reasonable doubt is applied in favor of the statute's validity.[12] Where necessary, details are supplied to avoid interminability in legislative drafting.[13] Article 10, § 19 was enacted as a limitation on the use of the revenue collected under any taxing law—state or municipal.[14] It was designed to prevent concealment of the purpose of a tax levy and to prohibit the improper use of a fund pledged for a certain purpose.[15] Section 203 was originally part of an act providing for the disposition of unclaimed monies.[16] When two other sections of the act were repealed in 1941, § 203 was retained. Section 203 has been part of the legislative scheme since 1919. Apparently, when § 2702 was enacted in 1965, the Legislature either failed to anticipate that the interest on taxes levied for municipal purposes would be deposited in state coffers pursuant to § 203, or it intended § 203 to be inapplicable to taxes levied for a specific purpose. The problem is not one of language analysis because of an unclear norm but rather one of a lacuna, a non-existent norm—a gap in the law.[17] The gap is closed, and the statute is saved by excluding interest on taxes expendable for a specific purpose pursuant to art. 10, § 19.

pality as to Interest Earned on Improvement Assessments or Other Special Funds Collected or Held by It," 143 A.L.R. 1341–42 (1943).

10. Title 62 O.S.1981 § 203, see note 5, supra.

11. *State v. Goforth,* 772 P.2d 911, 914 (Okla. 1989); *Earl v. Tulsa County Dist. Court,* 606 P.2d 545, 547–48 (Okla.1979).

12. *Fair School Finance Council v. State,* 746 P.2d 1135, 1150 (Okla.1987); *Price v. Reed,* 725 P.2d 1254, 1261 (Okla.1986).

13. *State v. Goforth,* see note 11, supra; *Maule v. Independent School Dist. No. 9,* 714 P.2d 198, 203 (Okla.1985).

14. *State ex rel. Bd. of County Comm'rs v. Oklahoma Tax Comm'n,* 191 Okla. 155, 127 P.2d 1052, 1054 (1942).

15. *St. Louis & San Francisco Ry. Co. v. Ottawa County Excise Bd.,* 201 Okla. 478, 207 P.2d 275,

277 (1949); *Black v. Oklahoma Funding Bond Comm'n,* 193 Okla. 1, 140 P.2d 740, 743 (1943).

16. Laws 1919, c. 287, p. 409. Title of Act:

"An Act providing for the disposition of certain unclaimed money; requiring State Officers and employees to pay into the State Treasury monthly all moneys received from miscellaneous sources, and declaring an emergency."

17. *State v. Goforth,* see note 11, supra; *Maule v. Independent School Dist. No. 9,* see note 13, supra; R. Aldisert, "Hard Core Judicial Process Problems Facing Judges in the 80's," p. 34 (1982). See also, *Lawson v. Baker,* 220 S.W. 260, 272–273 (Tex.Civ.App.1920), *writ dismissed/refused,* in which the Texas appellate court applied a similar analysis to avoid finding a statute unconstitutional which required interest earned on constitutionally imposed taxes to be paid into the state's general fund.

The finding that § 203 is inartfully drawn rather than unconstitutional is supported by the Legislature's recent amendment of 68 O.S.Supp.1986 § 2702,[18] and its enactment of a new law providing for the establishment of "sales tax remitting accounts." [19] The Legislature amended § 2702 effective November 1, 1989.[20] The amended statute provides for all sales taxes, including penalties and interest, collected on behalf of a municipality to be deposited in a sales tax remitting account. House Bill 1330, codified as 68 O.S.Supp.1989 § 1373, provides for the creation of the sales tax remitting account. Section 3 of House Bill 1330 now provides for the distribution of the proportionate amount of interest earned to municipalities on a monthly basis.

The Tax Commission implies in its petition for certiorari that if the City has a

18. Title 68 O.S.Supp.1986 § 2702 was amended effective November 1, 1989. While the contracting provisions of the statute remain identical to its predecessor, the amended version provides for a "sales tax remitting account." H.B. 1330 (May 8, 1989), amending 68 O.S.Supp.1983 § 1371, amending 68 O.S.Supp.1986 § 2702, and enacting 68 O.S.Supp.1989 § 1373, provides in pertinent part:

"... The Oklahoma Tax Commission shall place all sales taxes, including penalties and interest, collected on behalf of a municipality pursuant to the provisions of this section in the Sales Tax Remitting Account as provided in Section 3 of this act ..."

19. H.B. 1330 (May 8, 1989), amending 68 O.S. Supp.1983 § 1371, amending 68 O.S.Supp.1986 § 2702, and enacting 68 O.S.Supp.1989 § 1373, provides in pertinent part:

"... SECTION 3. NEW LAW. A new section of law to be codified in the Oklahoma Statutes as Section 1373 of Title 68, unless there is created a duplication in numbering, reads as follows:
A. There is hereby created within the State Treasury an account to be designated the 'Sales Tax Remitting Account'.
B. The account shall consist of all sales tax revenue, penalties and interest, collected by the Oklahoma Tax Commission pursuant to the Oklahoma Sales Tax Code, Section 1350 et seq. of Title 68 of the Oklahoma Statutes, and all sales tax revenue, penalties and interest collected by the Oklahoma Tax Commission on behalf of counties or municipalities pursuant to a contractual agreement authorized by Section 1371 or Section 2702 of Title 68 of the Oklahoma Statutes.
C. The State Treasurer shall invest the monies deposited in the Sales Tax Remitting Account in investments as authorized by law for municipalities and counties and in a manner consistent with the requirements of law concerning remittance of sales tax revenue to municipalities and counties upon behalf of which the Oklahoma Tax Commission collects such taxes.
SECTION 4. NEW LAW. A new section of law to be codified in Oklahoma Statutes as Section 1374 of Title 68, unless there is created a duplication in numbering, reads as follows:
A. Not later than the fifth day of each month, the State Treasurer shall determine and shall certify to the Oklahoma Tax Commission the aggregate amount of interest earned upon the total of all amounts deposited to the Sales Tax Remitting Account during the preceding month.
B. Not later than the fifteenth day of each month, the Oklahoma Tax Commission,acting (sic) on behalf of a municipality or county for collection of sales taxes, shall determine and then remit to each municipality or county:
1. The amount of sales tax revenue, penalties and interest collected on behalf of the municipality or county for the preceding month; and
2. An amount equal to the municipality's or county's proportionate share of the total interest earned upon all amounts deposited to the Sales Tax Remitting Account for the month as determined by the Oklahoma Tax Commission as provided in subsections C and D of this section ..."

20. On January 26, 1990, we issued an order to show cause why this case should not be dismissed as moot in light of the Legislature's enactment of H.B. 1330 (May 8, 1990), see note 19, id. The City responded and requested the cause be dismissed. No response was received from the Tax Commission. The show cause order included a demand that the Tax Commission disclose the existence of any unappropriated funds which represent interest earned from the investment of municipal sales taxes. However, we assume that the failure to answer is because any fund which might be available is located in the state treasury. The State Treasurer in the companion case, *City of Oklahoma City v. State*, 789 P.2d 1300 (1990), also promulgated today, reports that all funds representing interest earned on the collection of municipal sales taxes have been appropriated to the Constitutional Reserve Fund. Our decision to release an opinion is based upon our concern with the Court of Appeals' characterization of the Tax Commission as a "vendor," and because failure to issue an opinion would leave the issue of recovery of appropriated monies representing interest undecided.

valid claim to interest as an accretion to principal, it is against the State Treasurer, and to require the payment of interest on municipal tax collections would "strike to the heart of the State's fiscal integrity." This argument is unpersuasive because of the Legislature's amendment of § 2702 and its enactment of 68 O.S.Supp.1989 § 1373. Additionally, absent a contract executed in accordance with 68 O.S.Supp.1986 § 2702, the revenues from municipal taxes would never be deposited in the state treasury; and there would be no dispute over entitlement to the interest earned. It would belong to the municipality investing the tax. At the end of any contract term, Oklahoma City or any other municipality could elect not to contract for these services. The argument that the state's fiscal health depends upon an appropriation of the interest is unconvincing. Furthermore, adoption of this holding need not disrupt the state treasury's machinery. The machinery to set up an individual account for the deposit of . municipal tax revenues existed before the Legislature's intervention. Title 62 O.S. Supp.1989 § 7.2 provides for a Special Agency Account Board with the authority to approve the establishment of agency special accounts in the official depository of the state treasury. Such an account could be utilized to segregate municipal tax monies entering the state system. Interest on these accounts could then be paid to the appropriate municipality as part of the monthly disbursal.[21]

## II

## INTEREST MAY NOT BE RECOVERED IF THE MONIES FOR WHICH AN ACCOUNTING IS SOUGHT HAVE BEEN APPROPRIATED.

■ We agree with the Tax Commission's assertion that the City cannot recover interest earned on investment of the municipal sales taxes if those monies have been appropriated and disbursed.[22] Revenues deposited to the general revenue fund are allocated monthly on a percentage basis to the appropriate state agency.[23] If any funds remain in the fund at the end of the fiscal year, that amount is placed in the state treasury's sinking fund.[24] One might logically assume from this scheme that any interest earned on the investment of municipal sales taxes has been appropriated. Prior to the trial court's dismissal, the Tax Commission, in its answer to the City's petition, denied having information sufficient to disclose an applicable interest rate, dollar amount, or number of deposit days involved. It also denied having knowledge

21. Title 62 O.S.Supp.1989 § 7.2 provides in pertinent part:
"A. There is hereby re-created ... a Special Agency Account Board ... The Board shall have the authority to approve the establishment of agency special accounts in the official depository of the State Treasury ...
C. The Board may approve agency special accounts for money received by state agencies for the following purposes:
8. Funds for which the state agency acts as custodian ..."

22. See, *Choctaw Nation v. State*, 490 F.2d 521, 526 (10th Cir.1974), *cert denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972) and 417 U.S. 946, 94 S.Ct. 3070, 41 L.Ed.2d 666 (1974); *Commissioners of Land Office v. Brunson*, 175 Okla. 101, 51 P.2d 500, 502 (1935).

23. Title 62 O.S.1981 § 9.1 provides in pertinent part:
"A. Effective February 10, 1947, and thereafter, revenues deposited in the State Treasury to the credit of the General Revenue Fund or of any special fund which derives its revenue in whole or part from state taxes or fees shall be allocated monthly to each department, institution, board, commission or special appropriation on a percentage basis, in that ratio that the total appropriation for each such department, institution, board, commission or special appropriation from each fund for that fiscal year bears to the total of all appropriations from each fund for that fiscal year ..."

24. The Okla. Const. art. 10, § 23a provides in pertinent part:
"Any surplus which has accrued or may hereafter accrue to the General Revenue Fund of the State of Oklahoma during any fiscal year shall be placed monthly in a sinking fund in the State Treasury to be used solely for the purpose of paying the principal and interest of the outstanding and unpaid bonded indebtedness of the State of Oklahoma ..."

of whether a fund representing interest earned was being held by the State Treasurer. However, the issue has been resolved by the State Treasurer's response to our show cause order in *City of Oklahoma City v. State*, 789 P.2d 1300 (Okla.1990). The State Treasurer reports that all funds have been appropriated to the Constitutional Reserve Fund. Because any funds representing interest earned on the investment of municipal sales taxes have been appropriated, they may not be recovered.

## CONCLUSION

Interest obtained from investment of municipal taxes is a part of those proceeds. Utilization of that interest for a purpose other than that for which the taxes are levied is inconsistent with art. 10, § 19. Problems in accounting do not justify depriving owners of their funds.[25] However, all monies representing interest earned from the investment of municipal sales taxes have been appropriated. There is no fund from which the interest earned can be recovered. Therefore, although the cause is reversed, there is no remedial action which could be taken on remand.

CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; REVERSED.

HODGES, LAVENDER, DOOLIN, and SUMMERS, JJ., concur.

HARGRAVE, C.J., OPALA, V.C.J., and SIMMS, J., dissent.

OPALA, Vice Chief Justice, dissenting.

The court reverses today the nisi prius dismissal of Oklahoma City's [City's] lawsuit for failure to state a breach-of-contract claim and vacates the Court of Appeals' opinion which:

**25.** *McMillan v. Robeson County*, 262 N.C. 413, 137 S.E.2d 105, 108 (1964).

**1.** 68 O.S.Supp.1986 § 2702.

**2.** Today's pronouncement—that the interest earned on municipal sales tax revenue is an accretion to the principal—has constitutional underpinnings. In holding that the interest earned on municipal sales tax revenue collected

(a) holds the City was entitled to interest accrued to the State on sales tax revenue which the Oklahoma Tax Commission [Commission] collected for it and deposited with the State Treasurer [Treasurer] in a revolving fund account kept pursuant to the statutory regime then in force[1] and

(b) attributes "vendor" status to the Commission.

Today's pronouncement rests on a legal theory different from that applied by the Court of Appeals, but reaches the same result.[2] Its ultimate conclusion is that *no* recovery of interest earned on the City's share of the invested revolving account revenue is possible *because all funds from which payment could have been made have now been exhausted.*

I cannot join the court's pronouncement. I would grant certiorari to dismiss this appeal as mooted by after-enacted amendatory legislation, 68 O.S.Supp.1989 §§ 1373 and 2702,[3] based on (a) the City's unqualified confession (on certiorari) that the legal issues pressed below in its declaratory judgment suit against the Commission and the Treasurer are no longer lively and (b) the Treasurer's report to this court that there are no funds in any account from which a recovered interest could be paid. I would direct that, on remand, the district court order its record memorialized to show that this controversy became moot while on certiorari to the Court of Appeals.

I

## MATERIAL MIDAPPEAL DEVELOPMENTS WHICH TRIGGER THE MOOTNESS DOCTRINE

This controversy was generated by the City's attempt (a) to establish its right to

by the Commission pursuant to its contract with the City is due the recipient municipality, the court relies on the mandate of Art. 10, § 19, Okl. Const., which provides that taxes levied and collected for one purpose may not be devoted to another.

**3.** Okl.Sess.L.1989, Ch. 168, approved May 8, 1989, eff. Oct. 1, 1989 (68 O.S.Supp.1989 § 1373) and Nov. 1, 1989 (68 O.S.Supp.1989 § 2702).

the interest earned by the State on sales tax revenue collected for the City by the Commission pursuant to a contractual arrangement and (b) to prevent the Treasurer and the Commission from "appropriating" those funds. The then-effective statutory scheme allowed municipalities to contract with the Commission for collection of municipal sales tax revenue. All the collected funds would be routinely deposited with the Treasurer in the Commission's revolving account and commingled with other tax collections.[4] The interest paid on the investment from the revolving account became subject to legislative appropriation. The Commission remitted each month to the municipal recipient the amount of tax collected less its statutorily authorized retention fee. No interest was ever paid the City on its share of the invested revenue.

While appellate scrutiny is generally confined strictly to the record of proceedings below, a well-recognized exception sanctions an appellate tribunal's claim to cognizance of those after-occurring facts—transpiring during the pendency of an appeal—which adversely affect the reviewing court's capacity to administer effective relief.[5]

After the Commission and the Treasurer sought certiorari for review in this case and in a related appeal,[6] the legislature changed the statutory collection scheme governing the recipient cities' revenue. Beginning November 1, 1989, *all sales taxes, including penalties and interest,* collected by the Commission under a contractual arrangement *must be deposited in a sales tax remitting account* and *distributed monthly to each recipient municipality.*[7] The claim to interest collected on City's sales tax revenue is *now statutorily established. The City has unequivocally conceded* that this controversy, pressed below under the old statutory regime, now stands mooted by the amendatory 1989 legislation. The very problem which precipitated the instant quest for recovery is incapable of repetition under the current sales tax collection regime.

The Court of Appeals' attribution of "vendor" status to the Commission, *qua collector of the sales tax* for another recipient entity, even if indeed mistaken, cannot again be invoked in the face of new legislation and hence the error does not clamor for correction in a precedent-setting pronouncement. The amended statute now in force amply regulates the relationship between the City, *qua* ultimate revenue recipient, and the Commission, *qua collector of a municipal entity's revenue.*[8] The Trea-

---

4. 68 O.S.Supp.1986 § 2702; 62 O.S.Supp.1986 § 7.1.

5. *Lawrence v. Cleveland County Home Loan Auth.,* Okl., 626 P.2d 314, 315 [1981]; *Brown Investment Company v. Hickox,* Okl., 369 P.2d 807, 808 [1962]; *Carlton v. State Farm Mutual Automobile Ins. Co.,* Okl., 309 P.2d 286, 289–290 [1957]; *City of Tulsa v. Chamblee,* 188 Okl. 94, 106 P.2d 796, 798 [1940]; see also *Tulsa Tribune v. Oklahoma Tax Com'n,* Okl., 768 P.2d 891, 896 [1989] (Opala, V.C.J., dissenting).

6. The *City of Oklahoma City v. The State Treasurer, Leo Winters, Treasurer,* Okl., 789 P.2d 1300 [1990].

7. 68 O.S.Supp.1989 §§ 1373 and 2702 (Okl.Sess. L.1989, Ch. 168). The amendatory legislation added the following paragraph to § 2702:

"The Oklahoma Tax Commission shall place all sales taxes, including penalties and interest, collected on behalf of a municipality pursuant to the provisions of this section in the Sales Tax Remitting Account as provided in Section 3 of this act."

8. I must recede from the court's characterization of the Commission's duty when collecting City tax. Today's opinion overlooks the statute-imposed institutional design. Under the regime in force during the period in this controversy, the Commission, *qua* collector, *was under no duty to invest the City's funds.* Its job was to collect and remit. *The very statute that authorized cities to levy sales tax also established the timetable for State remittance of City revenue. Only when unreasonably withholding municipal funds on hand in disobedience of the statutory remittance schedule could the State have ever been liable for interest accruable to a city as its damages for delay or moratory damages. Seal v. Banes,* 183 Okl. 203, 80 P.2d 657, 663 [1938]; *E.B. Jones Const. v. City & County of Denver,* 717 P.2d 1009, 1014 [Colo.App.1986]. In the face of the self-containing levy-and-collection scheme then in existence, the court erroneously invokes today the provisions of Art. 10, § 19, Okl. Const., to hold that State-earned interest income

surer unequivocally informs this court that the interest earned on the City's sales tax revenue during the period in suit has been appropriated by the legislature and funds no longer exist from which any recovered interest could be paid.

Where, as here, after an appeal has been commenced, conditions arise which preclude an appellate decision from affording any effective relief, the appeal will be dismissed for mootness.[9] A dispute ceases to present a lively "case or controversy" when the tendered issues are abstract, hypothetical or have become moot.[10] This is the essence of the law's mootness doctrine. Oklahoma jurisprudence recognizes but two "escape hatches" from its strictures—the public-interest[11] and the likelihood-of-recurrence[12] exceptions. Neither is available to the two certiorari petitioners before us—either to the Treasurer or to the Commission.

Distribution of public revenue is the only issue here. No real relief is affordable, and the challenged conduct of the Commission is not likely to recur. The amendatory legislation's comprehensive character now regulates the interaction of the Commission with its municipal recipient-clients *so completely* that appellate pronouncement is unnecessary. Yesterday's question, now fully answered by statute, does not bear the earmarks of one "capable of repetition" while evading review.[13]

*Because the issues in litigation stand mooted by the 1989 legislative changes and there are no unappropriated funds from which the interest sought for the period in question could be paid,* I would grant certiorari and put an end to this quarrel without adding gratuitous judicial gloss.

## II

## A LAWYER'S DUTY TO APPRISE THE COURT OF AFTER–OCCURRING DEVELOPMENTS WHICH CAST DOUBT ON THE CONTINUED LIVELINESS OF A CONTROVERSY

This case cries out for a refresher course in legal ethics to remind the Bar that a lawyer's maintenance of a mooted contro-

accreted to the City's share of the invested principal by force of our fundamental law.

9. *Hamilton v. Investment Towers Corporation,* Okl., 489 P.2d 488, 490 [1971]; *Wolfe v. Hart's Bakeries, Inc.,* Okl., 460 P.2d 950, 952 [1969]; *Edwards v. Hanna Lumber Co.,* Okl., 415 P.2d 980, 981 [1966]; *Duncan v. Sims,* Okl., 277 P.2d 145, 146 [1954]; *Westgate Oil Co. v. Refiners Production Co.,* 172 Okl. 260, 44 P.2d 993, 994 [1935]; *In Re Protest Against Referendum Petition No. 5,* 185 Okl. 393, 92 P.2d 374, 375 [1939]; *Ham v. McNeil,* 27 Okl. 773, 117 P. 207 [1911].

10. *Rogers v. Excise Bd. of Greer County,* Okl., 701 P.2d 754, 761 [1985]; *Lawrence v. Cleveland County Home Loan Auth., supra* note 5 at 315; *Edwards v. Hanna Lumber Co., supra* note 9 at 981; *Westgate Oil Co. v. Refiners Production Co., supra* note 9 at 994; *Payne v. Jones,* 193 Okl. 609, 146 P.2d 113, 116 [1944]; *Wallace v. McClendon,* 144 Okl. 39, 289 P. 354 [1930]. Art. 3, § 2, U.S. Const., limits the jurisdiction of the U.S. Supreme Court to "cases and controversies." In *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 [1975], the Court held that there must be a lively controversy *not only at the time the complaint is brought, but also when the case is reached for review.*

11. *Westinghouse Elec. v. Grand River Dam Auth.,* Okl., 720 P.2d 713, 720 [1986]; *Lawrence v. Cleveland County Home Loan Auth., supra* note 5 at 315–316; *Application of Goodwin,* Okl., 597 P.2d 762, 764 [1979]; *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 [1948]; *Peppers Refining Co. v. Corporation Commission,* 198 Okl. 451, 179 P.2d 899, 901 [1947]; *Payne v. Jones,* 193 Okl. 609, 146 P.2d 113, 116 [1944]; see also *Tulsa Tribune v. Oklahoma Tax Com'n, supra* note 5 at 896 (Opala, V.C.J., dissenting).

12. *Morton v. Adair County Excise Bd.,* Okl., 780 P.2d 707, 711 [1989]; *Lawrence v. Cleveland County Home Loan Auth., supra* note 5 at 315–316; *In re D.B.W.,* Okl., 616 P.2d 1149, 1151 [1980]; see also *Tulsa Tribune v. Oklahoma Tax Com'n, supra* note 5 at 896 (Opala, V.C.J., dissenting).

13. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 [1911]; *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 [1973]; see also *In re. D.B.W., supra* note 12 at 1151; *Federal Land Bank of Wichita v. Story,* Okl., 756 P.2d 588, 589 [1988].

versy may constitute professional misconduct. The Treasurer and Commission filed their certiorari petitions on February 13, 1989. The amendatory legislation was approved by the Governor May 8, 1989. We issued a show cause order in both appeals on January 26, 1990 to inform ourselves of the controversy's status.

During the course of litigation counsel have an ethical duty to advise the court of developments occurring after the lawsuit's commencement, which tend to moot the controversy.[14] This duty to inform applies with equal force to private lawyers as well as to those in the service of a public agency.[15]

When issues have become moot and relief may no longer be afforded, the continued prosecution of an action (or of a plea for corrective relief) becomes closely akin, in its effect, to the maintenance of a frivolous or groundless claim. At least one federal court has held that an attempt to press a mooted lawsuit is no less sanctionable than the institution of a groundless claim.[16] The continued prosecution of a mooted controversy clogs an overburdened judicial system, needlessly delays the end of litigation and wastes scarce judicial resources.

Civil and disciplinary tools are available and should be used to curb counsel's failure to end mooted claims. The Model Rules of Professional Conduct impose upon lawyers the duty of candor to the tribunal at every stage of the case.[17] A lawyer has an affirmative obligation to advise the

14. See *Amherst & Clarence Ins. v. Cazenovia Tavern,* 59 N.Y.2d 983, 466 N.Y.S.2d 660, 661, 453 N.E.2d 1077, 1078 [1983]; *St. Charles Parish School Bd. v. GAF Corp.,* 512 So.2d 1165, 1173 [La.1987]; see also Medina, Ethical Concerns in Civil Appellate Advocacy, 43 S.W.Law J. 677, 695 [1989]. The Court in *Board of License Com'rs of Town of Tiverton v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 [1985], reminds counsel "that they have a 'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation." The Court states that "[w]hen a development after this Court grants certiorari or notes probable jurisdiction could have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court *without delay.*" (Emphasis in original.) When corrective relief is sought by certiorari, the primary duty of apprising this court of subsequent changes likely to bring about the controversy's mootness rests on the petitioner—the party whose action is keeping the controversy alive by its affirmative plea for further relief.

15. The duty to inform a tribunal of an event that tends to moot mid-stage a lively controversy applies with equal efficacy to all lawyers—those practising privately and those on a public agency's payroll as in-house counsel. It is not the purpose of this discussion to raise a public lawyer's level of responsibility above that of a private practitioner. Whether the former owes a higher duty than a private lawyer is still debatable. The question need not be addressed in this case. See Miller, Government Lawyers' Ethics in a System of Checks and Balances, 54 Univ. of Chicago L.Rev. 1293 [1987]; *cf.* Patterson, Legal Ethics, The Law of Professional Responsibility, Part III, Introduction [1982].

16. In *Nemeroff v. Abelson,* 94 F.R.D. 136 [S.D.N.Y.1982], aff'd, 704 F.2d 652 [2nd Cir.1983], the defendants were awarded attorney's fees for the plaintiff's bad-faith *prosecution* of a meritless suit, although at the suit's inception an adequate factual basis for the claim was indeed in existence. A federal court's power to impose sanctions for bad-faith litigation *is not restricted to the initiation stages* of the controversy; sanctions may also be levied where bad faith is found in the subsequent *conduct of litigation.* See *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 [1980] (citing *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 [1973], and *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 [2nd Cir.1977]); *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 [1978]. See also *Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 424, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 [1978], where the Court held that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."

17. The Comment to Rule 3.3, Oklahoma Rules of Professional Conduct, 5 O.S.Supp.1988, Ch. 1, App. 3–A, states that an "advocate's task is to present the client's case with persuasive force," but the loyal performance of that responsibility is qualified by the advocate's *duty of candor to the tribunal.* The clear message of Rule 3.3 is that the duty of candor to the court explicitly outweighs the fidelity to serve the client. See Hazard and Hodes, The Law of Lawyering, p. 347 [1985]; Henry S. Drinker, Legal Ethics, p. 74 [1953]; Medina, *supra* note 14 at 694.

The federal court's response to the abuse of judicial process has spawned amendments to

court about matters relevant to the proper disposition of the controversy, such as any adverse precedent that is not revealed by opposing counsel.[18] New or amendatory legislation may have the same effect on the outcome of a lawsuit or on a plea for corrective relief as adverse legal precedent. If there is any doubt about the continued liveliness of a controversy, based on facts occurring after a proceeding's institution—whether at the trial or appellate stage—the pertinent facts should be disclosed to and then resolved by the court. Once the facts have been revealed counsel is always free to argue against the controversy's dismissal.

I would support the assessment of attorney's fees against a lawyer or his client for

pressing a quest to secure corrective relief when the controversy is known or should have been known to be moot.[19] In my view, a state entity's prosecution of certiorari quest to vindicate a right that inheres in a mooted controversy would also warrant imposition of a counsel-fee award. A certiorari petitioner in effect "initiates" a new proceeding for appellate review. A frivolous plea for corrective relief or that plea's continued maintenance *after* the controversy is no longer lively falls within the ambit of 12 O.S.Supp.1987 § 941(A).[20] The cited statute authorizes an award of attorney's fees in favor of a defendant when "any civil action [was] brought in any court of this state by any state ... commission ... *without reasonable basis or is friv-*

Rule 11, Federal Rules of Civil Procedure. The cited rule now requires a lawyer who signs paperwork for filing in court to represent that any paper filed is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The accountability Rule 11 imposes on lawyers adds an "ethical responsibility" to the concept that a baseless claim should not survive. *Levy v. Seaton*, 358 F.Supp. 1, 6 [S.D.N.Y.1973]; see also The Judicial Response to Lawyer Misconduct, Report of ABA Standing Committee on Professional Discipline Center for Professional Responsibility, p. IV.3 [May 1984]. *Oklahoma's counterpart to Rule 11 is 12 O.S.Supp.1987 § 2011.* Rule 11 and § 2011 give the courts greater enforcement powers. Section § 2011 provides that upon discovering a violation of the rule:

"the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

**18.** Rule 3.3(a)(3), Rules of Professional Conduct, *supra* note 17, provides:

"(a) A lawyer shall not knowingly: * * * (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; * * *"

The duty to disclose is not new. It is identical to DR 7–106(B)(1), Code of Professional Re-

sponsibility, 5 O.S.1981, Ch. 1, App. 3 (now superseded by the Rules of Professional Conduct), and can be traced back to the Canons of Professional Ethics as well. See Hazard and Hodes, *supra* note 17 at 352; Henry S. Drinker, *supra* note 17 at 78, Medina, *supra* note 14 at 704.

See also 12 O.S. Supp.1987 § 3203(E) for statutory articulation of a lawyer's duty to disclose during the discovery process. The cited statute makes supplementation of one's response to an interrogatory a *continuing obligation. See West v. Cajun's Wharf, Inc.*, Okl., 770 P.2d 558, 562 [1988].

**19.** See *City Nat. Bank & Trust Co. v. Owens*, Okl., 565 P.2d 4, 7 [1977]; *Moses v. Hoebel*, Okl., 646 P.2d 601, 603 [1982]; *Melinder v. Southlands Development, Inc.*, Okl., 715 P.2d 1341 [1985]; *Hervey v. American Airlines*, Okl., 720 P.2d 712, 713 [1986]; see also 20 O.S. Supp.1982 § 15.1, which provides:

"On any appeal to the Supreme Court, the prevailing party may petition the court for an additional attorney fee for the cost of the appeal. In the event the Supreme Court or its designee finds that the appeal is without merit, any additional fee may be taxed as costs."

**20.** The terms of 12 O.S. Supp.1987 § 941(A) are:

"The *defendant in any civil action brought in any court* of this state *by any state* agency, board, *commission*, department, authority or bureau authorized to make rules or formulate orders shall be entitled to recover against such state entity court costs, witness fees and reasonable attorney fees if the court determines that the action was brought without reasonable basis or is frivolous. This subsection shall apply to any action commenced on or after October 1, 1982." (Emphasis added.)

*olous."* (Emphasis mine.) [21]

In the present case, the pertinent facts were not placed of record until this court, acting *sua sponte,* issued an order calling upon the parties (a) to give us a status of the issues in controversy and (b) to account for any unappropriated funds representing interest earned on the sales taxes from which recovery could be had. All parties responded except the Commission. Though counsel for the Treasurer and the Commission stated in their certiorari petitions that an important public-law question needed to be addressed, they failed to inform this court of the legislative changes that became effective *after* certiorari had been brought.[22] This court should not be expected to learn about vital after-occurring developments through disclosure coerced by a show cause order.

Because, based on undisputed facts now of record, this controversy stood mooted when (a) the legislature amended the statute giving rise to the dispute and (b) the funds from which this liability could have been paid had been exhausted, I would grant certiorari for the purpose of (1) vacating the Court of Appeals' opinion, (2) dismissing the appeal and (3) remanding the cause to the trial court with directions to memorialize its record to show that this controversy became moot while on certiorari to the Court of Appeals as a result of after-enacted legislation and unavailability of funds from which the liability in contest could be paid.

---

**21.** The state may no longer be regarded as absolutely protected by sovereign immunity from counsel-fee liability for vexatious or bad-faith litigation conduct of its lawyers or functionaries. See *State ex rel. Poulos v. State Bd. of Equal.,* Okl., 646 P.2d 1269, 1274–1275 [1982].

**22.** If certiorari had not been sought and the case had been returned to the district court pursuant to the Court of Appeals' mandate, the City, *qua* plaintiff, would then have borne the responsibility for calling the nisi prius judge's attention to the intervening facts militating in favor of declaring the controversy moot.